UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

BRADY L. SKINNER,                              Case No.:  8:22-bk-00445-CPM
                                               Chapter 11

                Debtor.
_____/


**DISCLOSURE STATEMENT**
**IN CONNECTION WITH CHAPTER 11 PLAN OF BRADY L. SKINNER**



Kathleen L. DiSanto
Florida Bar No. 58512
**Bush Ross, P.A.**
Post Office Box 3913
Tampa, Florida 33601-3913
Telephone: (813) 224-9255
Facsimile: (813) 223-9620
Email:  kdisanto@bushross.com

COUNSEL FOR THE DEBTOR AND DEBTOR-
IN-POSSESSION


Dated:  May 14, 2022

Exhibit  "A" - Plan

Exhibit "B" - Ballot

Exhibit "C" – Liquidation Analysis

Exhibit "D" – Five Year Pro-Forma

---

**DISCLOSURE STATEMENT IN CONNECTION WITH**
**CHAPTER 11 PLAN OF BRADY L. SKINNER**

---

## I.    INTRODUCTION

This is the Disclosure Statement (the "**Disclosure Statement**") in the chapter 11 case of Brady L. Skinner (the "**Debtor**") which is currently pending in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "**Bankruptcy Court**"). This Disclosure Statement contains information about the Debtor and describes the *Chapter 11 Plan of Brady L. Skinner* (the "**Plan**") filed by the Debtor on May 14, 2022. A full copy of the Plan is attached to this Disclosure Statement as **Exhibit "A."**

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THE PLAN AND THIS DISCLOSURE STATEMENT CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

The classification of Claims and proposed treatment of and Distributions[1] to Creditors under the Plan are discussed in Section IV of this Disclosure Statement. General Unsecured Claims are classified in Class 7 and will receive Distributions as described in Article 4 of the Plan.

### A.    Purpose of This Disclosure Statement

This Disclosure Statement describes:

- The Debtor and significant events during the Bankruptcy Case;

- How the Plan proposes to treat Claims of the type you hold *(i.e.,* what you will receive on your Claim if the Plan is confirmed);

- Who can vote on or object to the Plan;

- What factors the Bankruptcy Court will consider when deciding whether to confirm the Plan;

- Why the Debtor believes the Plan is feasible, and how the treatment of your Claim under the Plan compares to what you would receive on your Claim in an alternative liquidation; and

- The effect of Confirmation of the Plan.

---

[1] Unless otherwise defined herein, all capitalized terms used in this Disclosure Statement have the meanings ascribed to them in the Plan.

1

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

**1.      Time and Place of the Hearing for Final Approval of this Disclosure Statement Confirmation of the Plan**

The Bankruptcy Court has conditionally approved this Disclosure Statement for the purpose of solicitation of acceptances or rejections of the Plan. The Bankruptcy Court will conduct a combined hearing to finally approve this Disclosure Statement as providing "adequate information" pursuant to section 1125 of the Bankruptcy Code and to confirm the Plan on _____, **at _____.m.** in **Courtroom 8A, Sam M. Gibbons U.S. Courthouse, 801 N. Florida Avenue, Tampa, Florida.**

**2.      Deadline For Voting to Accept or Reject the Plan**

If you are entitled to vote to accept or reject the Plan, vote on the enclosed Ballot, attached as **Exhibit "B"** and return the Ballot to Clerk, **United States Bankruptcy Court, Sam M. Gibbons U.S. Courthouse, 801 North Florida Avenue, Suite 555, Tampa, Florida, 33602** or electronically by accessing the Bankruptcy Court's website at http://www.flmb.uscourts.gov and selecting Chapter 11 Ballots under Electronic Filing. A copy of the executed Ballot should also be mailed to **Bush Ross, P.A., P.O. Box 3913, Tampa, FL 33601-3913, Attn: Kathleen L. DiSanto.** You should carefully review Article V below for a discussion of voting eligibility requirements.

Your ballot must be received by **4:00 p.m. EST on_____, 2022** or it will not be counted.

**3.      Deadline for Objecting to the Adequacy of the Disclosure Statement and Confirmation of the Plan**

Objections to this Disclosure Statement or to the Confirmation of the Plan must be filed with the Court and properly served upon **Brady L. Skinner,** 6911 Point of Rocks Road, Sarasota, Florida 34242, with a mandatory copy to **Bush Ross, P.A., P.O. Box 3913, Tampa, FL 33601-3913, Attn: Kathleen L. DiSanto** by _____, **2022.**

2

4.      **Identity of Person to Contact for More Information**

If you want additional information about the Plan, you should contact Kathleen L. DiSanto at **Bush Ross, P.A., P.O. Box 3913, Tampa, FL 33601-3913, 813-224-9255**.

5.      **Disclaimer**

**THE BANKRUPTCY COURT MAY CONDITIONALLY APPROVE THIS DISCLOSURE STATEMENT AS CONTAINING "ADEQUATE INFORMATION" OF A KIND AND IN SUFFICIENT DETAIL TO ENABLE PARTIES AFFECTED BY THE PLAN TO MAKE AN INFORMED JUDGMENT ABOUT ITS TERMS. THE BANKRUPTCY COURT HAS NOT YET DETERMINED WHETHER THE PLAN MEETS THE LEGAL REQUIREMENTS FOR CONFIRMATION, AND THE FACT THAT THE BANKRUPTCY COURT HAS CONDITIONALLY APPROVED THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT, OR A RECOMMENDATION THAT IT BE ACCEPTED. THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT IS SUBJECT TO FINAL APPROVAL AT THE HEARING ON CONFIRMATION OF THE PLAN. OBJECTIONS TO THE ADEQUACY OF THIS DISCLOSURE STATEMENT MAY BE FILED UNTIL _____, 2022.**

## II.      <u>BACKGROUND</u>

A.      **Description and History of the Debtor**

Skinner is a certified public accountant, licensed in the state of Ohio, and an entrepreneur. During the early 2000s, Skinner operated a number of businesses in the trucking and transportation industry and beverage distribution industry. At one time, one of Skinner's companies was one of the largest distributors for Coors products in the Midwest. Skinner also developed a number of properties in Southwest Florida, primarily in Sarasota County. Skinner personally guarantied many of the businesses' obligations. Over the past ten to twelve years, Skinner has resolved and paid a number of the debts arising from the businesses, but has been unable to settle or resolve the judgment currently held by JGAR, which was acquired from PNC Bank. Skinner has no ability to service the JGAR debt, which has a metastasized as a result of interest and attorney fees.

B.      **Events Leading to Chapter 11 Filing**

Skinner's chapter 11 filing was precipitated by a number of personal and business issues, which resulted in the commencement of litigation in multiple Ohio and Florida state courts. The transportation and beverage distribution businesses are no longer operating and have not been operating for some time. Skinner faces significant potential liability on account of claims arising from his guaranties of obligations of the businesses.

3

Prior to the petition date, JGAR employed a number of aggressive collection tactics, including attempting to pursue the Debtor's Homestead.  JGAR also garnished funds of the Debtor in a Charles Schwab securities account.   The issues relating to the garnishment of the securities account were resolved pursuant to the terms of a confidential settlement agreement between JGAR and Skinner.

Skinner filed this chapter 11 case with the goal to reach a fair resolution with all of his creditors, restructure his debts, and preserve the value of his assets, in part by redirecting funds that would otherwise be spent in state court litigation to resolve the claims of all creditors.

## C.    Significant Events During the Bankruptcy Case

On February 3, 2022, the Debtor filed his voluntary petition seeking relief under chapter 11 of the Bankruptcy Code.  The following represents the significant events thus far in the Bankruptcy Case.

### 1.    Approval of Periodic Payments to Certain Secured Creditors

Shortly after the Petition Date, the Debtor sought and obtained the approval of the Bankruptcy Court to make periodic monthly payments to U.S. Bank on account of the mortgage on the Homestead and Wells Fargo on account of the loan secured by the Debtor's vehicle.  The Debtor has made the periodic monthly payments to the secured creditors throughout the pendency of the Bankruptcy Case.

### 2.    Section 341 Meeting of Creditors

The meeting of creditors pursuant to section 341 of the Bankruptcy Code was held on March 14, 2022 and concluded on that day.

### 3.    Amendment of the Schedules and Statement of Financial Affairs

Prior to the Section 341 Meeting of Creditors, the Debtor amended the Statement of Financial Affairs to disclose additional transfers made during the two years prior to the Petition Date.

## III.    SUMMARY OF DEBTOR'S ASSETS AND SECURED CLAIMS

### 1.    The Debtor's Assets and Secured Claims

The Liquidation Analysis attached as **Exhibit "C"** describes and summarizes the Debtor's assets, the encumbrances thereon, the exemption status, and the Debtor's estimation of the amount that may be realized on disposition of the Assets in a chapter 7 case after payment of Secured Claims.  The Debtor's assets are also described in detail in the Schedules filed with the Bankruptcy Court.

4

84N6319.DOCX

**2.    Discussion of Estate Causes of Action**

The Debtor believes there are minimal chapter 5 claims that would be available to a chapter 7 trustee.  In the two years that preceded the Petition Date, the Debtor made various transfers of property as disclosed in the Amended Statement of Financial Affairs.  However, each of these transfers was for reasonably equivalent value or resulted in the resolution of claims that would have been costly to litigate and/or would result in uncollectible judgments.

The Debtor also disclosed in his Bankruptcy Schedules potential claims and causes of action against Charles Schwab.  These claims arise generally from Charles Schwab's failure to comply with account owner instructions.  Prior to the Petition Date, the Debtor maintained a brokerage account with Charles Schwab with cash on hand of approximately $375,000 between March 2020 and October 2021.  Despite claiming to freeze the account in March 2020, Charles Schwab refused to pay down the margin loan balance, yet continued to deduct interest charges in excess of $15,000 over the eighteen month period between March 2020 and October 2021.  In February 2020, Charles Schwab also refused to allow the Debtor to place an order for $50,000.00 of Moderna shares, despite allowing him to place subsequent orders in late March 2020.  The Debtor sustained substantial damages from Charles Schwab's failure to honor his order in February 2022, as Moderna shares were trading at approximately $34.00 per share in February 2020, but traded as high as $485 per share in August 2020.  Then, in September 2021, Charles Schwab unilaterally liquidated the account, selling a substantial amount of the portfolio and resulting in tens of thousands of lost profits.  The Debtor is in the process of attempting to identify counsel to pursue these claims, potentially on a contingency.

**3.    The Debtor's Compensation and Projected Disposable Income**

Pursuant to section 1129(a)(15) of the Bankruptcy Code, in the chapter 11 case of an individual debtor, if an unsecured Creditor objects to confirmation of a plan, the Bankruptcy Court cannot confirm the Plan, unless either:

(a)    unsecured Claims are to be paid in full through the plan; or

(b)    the value of the property to be distributed to Creditors under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2) of the Bankruptcy Code) for the five (5) year period beginning on the date the first payment is due under the plan.

**A.    Debtor's Historical Income**

The Debtor's income is derived from his social security benefit payments and retirement income.  The Debtor's income for fiscal years 2019, 2020, and 2021 can be summarized as follows and more detailed information is available in response to Item 5 on the Amended Statement of Financial Affairs (Doc. No. 36):

84N6319.DOCX

| Year | Social Security Benefits | Retirement Income/Interest /Dividends | Reportable Income | Total Gross Income |
|------|--------------------------|---------------------------------------|-------------------|--------------------|
| 2019 | $30,618.00 | $22,287.00 | $0.00 | $52,905.00 |
| 2020 | $31,111.00 | $38,962.00 | $0.00 | $70,0073.00 |
| 2021 | $31,000.00 | $77,000.00 | $1,686,217.81 | $1,794,217.81 |

Based on current trends and all information currently available, the Debtor anticipates his projected net income over the next five (5) years will stabilize and flatten. The Debtor does not anticipate that his gross income will exceed $95,000.00 annually.

**B.      Debtor's Projected Disposable Income**

The term "projected disposable income" as used in section 1129(a)(15) is not defined in the Bankruptcy Code.  However, the term "disposable income" is defined in section 1325(b)(2) of the Bankruptcy Code as "current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable non-bankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the years in which the contributions are made; and (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business."

The Supreme Court of the United States has indicated that in determining a debtor's projected disposable income (at least for the purposes of section 1325(b)(2)), a bankruptcy court is not to look exclusively at historical income but is to utilize a "forward looking approach" that accounts for anticipated changes in disposable income based on anticipated future events or changes.  *Hamilton v. Lanning*, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010). Accordingly, in order to use a "forward looking approach", the Debtor has estimated his average monthly income and expenses and has calculated projected disposable income by taking the average of anticipated annual income over the next five (5) years (2022-2026).

To assist in an analysis of the Debtor's projected disposable income, the Debtor has prepared and attached as **Exhibit "D"** to this Disclosure Statement which reflects his monthly income and expenses.  The Debtor has relatively minimal disposable income after payment of monthly expenses.

In addition, the Debtor resides in the homestead property with four adult housemates and a minor child, specifically, his former girlfriend, her incapacitated sister, and the former girlfriend's daughter and soon to be son-in-law.  The Debtor is not related by blood or marriage to any of the housemates.  Two of the adult housemates are not employed and do not generate sufficient income to require them to file tax returns.  The other adult housemates are law enforcement officers who generate less than $120,000 per

year, and one of whom has significant alimony and child support obligations, resulting in minimal disposable income.  The housemates do not and have not ever paid rent.  Prior to the Petition Date, the housemates contributed some of the food and household goods used by the household, but it is difficult if not impossible to quantify the Debtor's use of such resources.  Post-petition, the housemates have made an effort to purchase all of the food and household goods.

## IV.   SUMMARY OF THE PLAN AND TREATMENT OF CLAIMS

### A.   Purpose of the Plan

As required by the Bankruptcy Code, the Plan places Claims in various classes and describes the treatment each class will receive.  The Plan also states whether each class of Claims is impaired or unimpaired.  If the Plan is confirmed, recovery of any Claim will be limited to the amount provided by the Plan.

### B.   Claims Summary

| POC # | Creditor | Amount Filed or Scheduled | Objection Anticipated | Secured by Collateral [1] | Estimated Value of Collateral [2] | Estimated Allowed Unsecured Claim [3] | Note No. |
|---|---|---|---|---|---|---|---|
| 1 | Wells Fargo Auto | $36,330.51 | No | Yes | $45,000.00 | $0.00 | 4 |
| 2 | Sarasota County Property Tax Collector | $10,155.93 | No | Yes | $1,457,100.00 | $0.00 | 5 |
| 3 | Internal Revenue Service | $1,500.00 | Yes | No | n/a | $0.00 | 6 |
| 4 | American Express National Bank | $3,819.55 | No | No | n/a | $3,819.55 | 7 |
| 5 | JPMorgan Chase Bank, N.A. | $2,606.20 | No | No | n/a | $2,606.20 | 8 |
| 6 | Bank of America, N.A. | $3,617.52 | No | No | n/a | $3,617.52 | 9 |
| 7 | JGAR | $4,904,997.29 | No | No | n/a | $4,904,997.29 | 10 |
| 8 | U.S. Bank | $385,532.98 | No | Yes | $1,457,100.00 | $385,532.98 | 11 |
| 9 | 217 Funding | $18,194,286.10 | No | No | n/a | $18,194,286.10 | 12 |
| n/a | Coolidge Wall Co., L.P.A. | $19,592.73 | No | No | n/a | $19,592.73 | 13 |
| n/a | Dinsmore | $8,000.00 | No | No | n/a | $8,000.00 | 13 |
| n/a | Huntington National Bank | $5,000,000.00 | No | No | n/a | $5,000,000.00 | 13 |

\* The chart does not include any claims scheduled by the Debtor as contingent, unliquidated, or disputed unless a proof of claim was filed.

Claims Summary Chart Notes:

[1]    This column includes whether an asserted Claim is secured by collateral owned by the Debtor.

[2]    This column includes the Debtor's best estimate of the value of any collateral securing any Claim asserted against the Debtor.  The estimates of value are given for the purposes of disclosure, in order to assist Creditors in determining the amount of Unsecured Claims that may be ultimately Allowed and are not intended to be binding on the Debtor or any Creditor.

[3]    This column is the Debtor's estimate, given current information, as to the amount of the Unsecured Claims that may ultimately be Allowed in the Debtor's Bankruptcy Case after determination of any objections to Claims and after crediting the estimated value of any collateral securing such Claims.  These estimates are given without waiver of

any specific objection.  The Debtor estimates the total Unsecured Claims that may ultimately be Allowed is $23,109,326.66.  Assuming the Unsecured Creditor Distribution is funded with $20,000.00, the estimated percentage recovery for the Holders of Allowed Unsecured Claims is less than 1%.

4    Wells Fargo Auto's Proof of Claim No. 1 asserts a Claim in the total amount of $36,330.51 on account of the obligation secured by the 2018 Mercedes-Benz GLC Class.  The Claim states the value of the vehicle is $54,650.00, although the Debtor believes the value of the vehicle is $45,000.00, based on the appraiser's valuation attached to the Schedules.  The entire Allowed Claim will be treated as a Secured Claim and paid under the terms of the Plan.

5    The Sarasota County Property Tax Collector's Proof of Claim No. 2 asserts a secured claim in the amount of $10,155.93 for estimated 2022 property taxes.  The Debtor's mortgage payment includes an escrow for the payment of property taxes, and the Debtor anticipates the property taxes will be paid in the ordinary course.

6    The IRS filed Proof of Claim No. 3, asserting an unsecured priority claim in the amount of $1,500.00.  The Debtor anticipates the claim will be amended to $0.00, once he files his 2021 tax return, which is currently on extension.  The Debtor is working diligently to complete the return and intends to file the return in advance of confirmation.

7    American Express National Bank's Proof of Claim No. 4 asserts an unsecured claim arising from a credit card.

8    JPMorgan Chase Bank, N.A.'s Proof of Claim No. 5 asserts an unsecured claim arising from a credit card.

9    Bank of America, N.A.'s Proof of Claim No. 6 asserts an unsecured claim arising from a credit card issued to Phoenix Harbor Cove, Inc.  However, given the size of the claim and the anticipated distribution to unsecured creditors, the Debtor, in an exercise of his business judgment, does not presently intend to object to the claim, as the claim will not materially impact on the distributions received by other unsecured creditors.

10   JGAR's proof of claim asserts an unsecured claim in the amount of $4,904,997.29.  The Debtor does not anticipate objecting to the Claim as it solely asserts an unsecured claim.  However, JGAR has not terminated its judgment lien certificate, and the Debtor objects to any secured claim of JGAR.

11   217 Funding's proof of claim asserts an unsecured claim in the amount of $18,194,286.10.  The Debtor does not anticipate objecting to the Claim as it solely asserts an unsecured claim.

12   U.S. Bank's Proof of Claim No. 8 asserts a Claim in the total amount of $385,532.98 on account of the first mortgage secured by the Homestead.  The Claim does not state the value of the Homestead, but the Debtor believes the value is approximately $1,457,100.00.  The entire Allowed Claim will be treated as a Secured Claim, as value of the Homestead exceeds the amount of the Claim and the Bankruptcy Code's anti-modification provisions prevent the Debtor from modifying a first mortgage secured by their primary residence.

13   The Debtor scheduled these claims, but did not mark the claims as disputed, unliquidated, or contingent.

## C.    Unclassified Claims

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code.  They are not considered Impaired, and Holders of such Claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code.  As such, the Debtor has not placed the following claims in any class:

### 1.    Administrative Expenses

Administrative Expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under section 507(a)(2) of the Bankruptcy Code.  The Bankruptcy Code requires that all Allowed Administrative Expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

84N6319.DOCX

The following chart lists some of the Debtor's *estimated* administrative expenses, including professional fee claims, the amounts estimated to be owed as of the Effective Date, and the proposed treatment under the Plan:

| Nature of Administrative Expense Claim | Estimated Amount (Net of Retainer) | Proposed Treatment[2] |
|---|---|---|
| Professional Fees – Bush Ross, P.A. | $35,000.00 | Paid on the Effective Date of the Plan from the Effective Date Cash or as may otherwise be agreed by Bush Ross and the Debtor |
| Other Administrative Expenses | $0.00 | Paid in full on the Effective Date or according to separate agreement or as may be otherwise agreed by the parties |
| **TOTAL** | **$35,000.00** | |

**2.      United States Trustee Fees**

Any U.S. Trustee Fees owed on or before the Effective Date of the Plan will be paid by the Debtor on the Effective Date.

**3.      Priority Tax Claims**

Priority Tax Claims are unsecured income, employment, and other taxes described by section 507(a)(8) of the Bankruptcy Code.  Unless the holder of such a section 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five years from the order of relief.

While the IRs filed a proof of claim asserting a Priority Tax Claim in the amount of $1,500.00, the Debtor believes the claim will be amended.  The Debtor does not believe there are any other Priority Tax Claims.

Each Holder of an Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim regular installment payments in Cash in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.  Holders of Allowed Priority Tax Claims shall receive interest on account of their Allowed Priority Tax Claims at the rate established for delinquent tax obligations pursuant to 26 U.S.C. § 6621; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county, or state, such Holder shall receive interest on account of its Allowed Priority Tax Claim at the applicable statutory rate under state law.

---

[2] If the Debtor is unable to pay all Allowed Administrative Expense Claims on the Effective Date, the Debtor may pay such claims in a manner agreed to by the Holder(s) of such claim(s).

84N6319.DOCX

Such amounts will be paid by the Debtor on the later of the Effective Date or the date that such claim becomes an Allowed Priority Tax Claim. Notwithstanding the above, each Holder of an Allowed Priority Tax Claim may be paid under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Debtor or the Reorganized Debtor.

**D.      Classes of Claims**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**1.      Priority Claims**

Priority Claims are those unsecured pre-petition Claims entitled to statutory priority pursuant to sections 507(a)(3) through 507(a)(9) of the Bankruptcy Code (other than Priority Tax Claims). The Debtor does not believe he is liable for any claims of this type.

**2.      Classes of Secured Claims**

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as Secured Claims under section 506 of the Bankruptcy Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, any timely filed and Allowed Claim for a deficiency will be treated as a Class 7 General Unsecured Claim, unless otherwise provided by the Plan.

The following chart lists all classes containing Debtor's pre-petition Secured Claims and their proposed treatment under the Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 2:  Secured Claim of U.S. Bank (Homestead) | Impaired | This Class consists of the Allowed Secured Claim of U.S. Bank, secured by a first mortgage Lien on the Debtor's Homestead. After the Effective Date, the Debtor will pay the required monthly mortgage payments to U.S. Bank as such payments become due under the terms of the existing promissory note and mortgage. The existing promissory note and mortgage and any and all documents, filings, or instruments evidencing, arising out of, or relating to the claim and indebtedness owed by the Debtor to U.S. Bank on account of its Allowed Class 2 Claim shall remain in full force and effect, except to the limited extent they are specifically and expressly modified in this Plan. Any arrearage will be cured by the Debtor paying an additional amount equal to one-half (1/2) of the monthly payment at the time the Debtor makes the regular monthly mortgage |

10

| Class | Impairment | Treatment |
|---|---|---|
|  |  | payment. U.S Bank shall defer collection of any attorney's fees and costs incurred by U.S. Bank with respect to the obligation secured by the Debtor's Homestead until the time that the Unsecured Creditor Distribution is distributed to the Holders of Allowed Class 6 Claims, at which time any claim for attorney's fees and costs shall be paid. U.S. Bank shall retain its Lien on the Homestead on account of its first mortgage. Class 2 is Impaired, and the Holder of any Allowed Class 2 Claim is entitled to vote to accept or reject the Plan. |
| Class 3: Secured Claim of Sarasota County Property Tax Collector (Homestead) | Unimpaired | This Class consists of the Allowed Secured Claim of the Sarasota County Property Tax Collector, secured by a lien on the Homestead, if any. The Class 3 Secured Tax Claim secured by a Lien on the Homestead will be paid by the Debtor on the date such Secured Tax Claim becomes due under applicable law. The Holder of the Class 3 Secured Tax Claim shall retain all legal, equitable, and contractual rights with respect to the Homestead. Class 3 is Unimpaired, and the Holder of any Allowed Class 3 Claim is not entitled to vote to accept or reject the Plan. |
| Class 4: Secured Claim of Wells Fargo | Impaired | This Class consists of the Allowed Secured Claim of Wells Fargo, secured by a Lien on the 2018 Mercedes-Benz GLC Class. After the Effective Date, the Debtor will pay the required monthly payments to the Holder of the Allowed Class 4 Secured Claim of Wells Fargo as such payments become contractually due. The existing promissory note and any and all documents, filings, or instruments evidencing, arising out of, or relating to the claim and indebtedness owed by the Debtor to Wells Fargo shall remain in full force and effect, except to the limited extent they are specifically and expressly modified in this Plan. Any arrearage will be cured by the Debtor paying an additional amount equal to one-half (1/2) of the monthly payment at the time the Debtor makes the regular monthly payment. Wells Fargo shall waive collection of any attorney's fees and costs incurred by Wells Fargo with respect to the obligation secured by the 2018 Mercedes-Benz GLC Class. Wells Fargo shall retain its Lien in the 2018 Mercedes-Benz GLC Class. Class 4 is Impaired, and the Holder of any Allowed Class 4 Claim are entitled to vote to accept or reject the Plan. |

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 6: Secured Claim of 217 Funding (All Asset Lien) | Impaired | This Class consists of the Allowed Secured Claim of 217 Funding, secured by a pledge of all of the Debtor's assets. The amount of 217 Funding's Allowed Secured Claim shall equal $5,000.00, at an interest rate of 4.00% per annum, or an amount agreed upon by 217 Funding and the Debtor, or an amount determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code. The balance of 217 Funding's Allowed Claim shall be treated in accordance with Class 7. As treatment of 217 Funding's Allowed Secured Claim, 217 Funding shall retain its lien on the Debtor's assets. Class 5 is Impaired, and the Holder of the Allowed Class 5 Claim is entitled to vote to accept or reject the Plan.<br><br>(a) Payment. As treatment of 217 Funding's Allowed Secured Claim, 217 Funding shall retain its lien on the Debtor's assets and shall receive payment in full equal to the Allowed amount of its Secured Claim as follows:<br><br>Beginning on the date that is thirty days after the Effective Date and on a monthly basis thereafter, the Debtor shall pay to 217 Funding the amount of $400.00 per month, until the 15th day of December 2022, at which time the remaining principal balance together with any interest accrued thereon shall be fully due and payable without demand.<br><br>(b) Default. The Reorganized Debtor shall be in default under the Plan upon the failure to make any payment under the Plan which is not timely cured as provided in this subsection (b) (an "**Uncured Default**"). Upon any payment default, 217 Funding shall send written notice to the Debtor of such payment default via email and via certified mail to the notice addresses provided in section 13.6 of the Plan. Following receipt of such written notice of payment default, the Debtor or Reorganized Debtor shall have thirty (30) days from the written notice of default to cure any default. The failure to cure any such payment default shall constitute an Uncured Default. |

12

| Class | Impairment | Treatment |
|---|---|---|
| | | (c) <u>Remedies on Default.</u> Upon the occurrence of an Uncured Default, 217 Funding shall be entitled to exercise any rights and remedies as to its lien on the Pledged Assets. Any payments made to 217 Funding under the Plan shall be credited to the amount due to 217 Funding on account of its Allowed Secured Claim and shall reduce the amount to which 217 Funding is entitled to recover on account of such Claim through the remedies provided in subsection (c). <br><br>(d) <u>Release of Liens.</u> Upon payment in full of 217 Funding's Allowed Secured Claim pursuant to the terms of the Plan, 217 Funding's Allowed Secured Claim shall be deemed satisfied and its lien shall be extinguished and shall no longer encumber the Pledged Assets. <br><br>(e) <u>Pre-Payment Explicitly Authorized.</u> The Debtor or Reorganized Debtor shall be entitled, at any time and without penalty, to pay off the then-outstanding balance of 217 Funding's Allowed Secured Claim. <br><br>(f) <u>Miscellaneous.</u> Notwithstanding the above, 217 Funding may be paid under such other terms as may be agreed upon by 217 Funding and the Debtor or the Reorganized Debtor as the case may be. |
| Class 6:  Secured Claim of JGAR (Judgment Lien) | Impaired | This Class consists of any Allowed Secured Claim of JGAR on the Debtor's Personal Property pursuant to section 55.10 of the Florida Statutes by the recording of a Judgment Lien Certificate with the Judgment Lien Registry of the state of Florida or any lien on real property created by the recording of a certified copy of the final judgment in the public records of any county in the state of Florida. JGAR's Allowed Class 6 Claim, if any, shall be in an amount agreed upon by JGAR and the Debtor or an amount determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code.  The balance of JGAR's Allowed Claim shall be treated in accordance with Class 7. Class 6 is Impaired, and the Holder of any Allowed Class 6 Claim is entitled to vote to accept or reject the Plan. |

84N6319.DOCX

### 3.    Unsecured Claim*s*

Unsecured Claims are those claims that are not secured by property of the estate and are not entitled to priority under section 507(a) of the Bankruptcy Code. The Plan provides for one class of Unsecured Claims.

| Class | Impairment | Treatment |
|---|---|---|
| Class 7: General Unsecured Claims<br><br>Total Estimated Allowed Class 7 Claims: $23,109,326.66<br><br>Unsecured Creditor Distribution: $20,000.00 | Impaired | This Class consists of all Allowed General Unsecured Claims that are not otherwise classified, including any portion of a Claim filed as a Secured Claim that is determined to be an Allowed Unsecured Claim and any Deficiency Claims. The Holder(s) of Allowed Unsecured Claim(s), shall share Pro Rata in the Unsecured Creditor Distribution. The Pro Rata share of any Distributions from the Unsecured Creditor Distribution shall calculated as a fraction of the amount of any such Distribution, the numerator of which shall be the Allowed Amount of such Allowed Class 7 Claim, and the denominator shall be the aggregate Allowed Amount of all Allowed Class 7 Claims. Within six months of the Effective Date, the Unsecured Creditor Distribution shall be funded with $20,000.00 and distributed to the Holders of Allowed Class 7 Unsecured Claims within ninety days of the funding of the Unsecured Creditor Distribution. Class 7 is Impaired, and the Holders of Allowed Class 7 Claims are entitled to vote to accept or reject the Plan. |

## E.    Means of Implementing the Plan

The Debtor anticipates having sufficient Effective Date Cash to pay Allowed Administrative Expense Claims, including Allowed Professional Fee Claims, or reaching an agreement with the Holder(s) of Allowed Professional Fee Claims with respect to payment of such Claim(s).

The Debtor shall use his Future Income or income generated from his exempt retirement account or Social Security benefit payments to make payments to the Holders of Allowed Secured Claims.

The Unsecured Creditor Distribution will be funded, at the Debtor's sole discretion, from Future Income, an institutional or non-institutional loan, or through the liquidation of the Debtor's Assets. The Holders of Allowed Unsecured Claims will receive an initial distribution on the Effective Date and annually thereafter as provided in the Plan, although there is no penalty for prepayment.

84N6319.DOCX

**F.      Executory Contracts and Unexpired Leases**

The Debtor may be a party to certain contracts, leases, or agreements which may be determined to be executory or unexpired as of the Petition Date.  The inclusion of any contract, lease, or other agreement in this section of the Disclosure Statement shall not be deemed an admission that such contract was executory or unexpired as of the Petition Date.

To the extent such contracts or leases exist, they are deemed to have been rejected under the Plan, unless an order has been entered approving the assumption of a contract or a lease or a motion is pending regarding the assumption of a contract or lease.

Unless the Bankruptcy Court has specifically ordered otherwise, the deadline for filing a proof of claim based on a claim arising from the rejection of a lease or contract is thirty (30) days from the date of the entry of an order rejecting a lease or executory contract. Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed.

**G.      Tax Consequences of Plan**

**CREDITORS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.**

The following discussion is a summary of certain U.S. federal income tax consequences of the consummation of the Plan to Holders of Claims and the Debtors.  This summary is based on the IRC, the U.S. Treasury Regulations promulgated hereunder, judicial authorities, published administrative positions of the IRS and other applicable authorities, all as in effect on the date of this Disclosure Statement and all of which are subject to change or differing interpretations, possibly with retroactive effect.  No rulings of determinations of the IRS or any other taxing authorities have been sought or obtained with respect to the tax consequences discussed herein, and the discussion below is not binding upon the IRS or the courts.  No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position discussed herein.

This discussion does not apply to Holders of Claims that are not "U.S. Persons" (as such phrase is defined in the IRC) and does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtor or to such Holders in light of their individual circumstances.  This discussion does not address tax issues with respect to such Holders subject to special treatment under the U.S. federal income tax laws (including, for example, banks, governmental authorities or agencies, pass-through entities, dealers and traders in securities, insurance companies, financial institutions, tax-exempt organizations, small business investment companies and regulated investment companies).  No aspect of state, local, estate, gift, or non-U.S. taxation is addressed.

**ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF AN ALLOWED CLAIM. ALL HOLDERS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE U.S. FEDERAL, STATE, LOCAL, AND NON-UNITED STATES TAX CONSEQUENCES OF THE PLAN.**

**IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, ANY TAX ADVICE CONTAINED IN THIS SUMMARY (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING TAX-RELATED PENALTIES UNDER THE IRC. TAX ADVICE CONTAINED IN THIS SUMMARY (INCLUDING ANY ATTACHMENTS) IS NOT WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED BY THE SUMMARY. EACH TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

1.      **Consequence**s **to Holders of Claims**

        a)      **Consequences to Holders of Secured Claims**

The following discussion assumes that each Holder of an Allowed Secured Claim holds such claim as a "capital asset" within the meaning of section 1221 of the IRC. Pursuant to the Plan, each Allowed Secured Claim, at the election of the Debtor, may (i) remain secured by a Lien in property of the Debtor retained by such Holder, (ii) paid in full in cash (including allowable interest) over time or through a refinancing or a sale of the respective Asset securing such Allowed Secured Claim, (iii) offset against, and to the extent of, the Debtor's claims against the Holder, or (iv) otherwise rendered unimpaired as provided under the Bankruptcy Code. If an Allowed Secured Claim remains secured by a Lien in the Debtor's Assets, the Holder of such Claim should not recognize gain or loss except to the extent collateral securing such Claim is changed, and the change in collateral constitutes a "significant modification" of the Allowed Secured Claim within the meaning of Treasury Regulations promulgated under section 1001 of the IRC.

If an Allowed Secured Claim is paid in full in Cash, the Holder should recognize capital gain or loss (which capital gain or loss would be long-term capital gain or loss to the extent that the Holder has held the debt instrument underlying its claim for more than one year) in an amount equal to the amount of Cash received over the Holder's adjusted basis in the debt instrument(s) underlying its Allowed Secured Claim. To the extent that a

16

portion of the Cash received represents accrued but unpaid interest that the Holder has not already taken into income, the Holder may recognize ordinary interest income.

**b)      Consequences to Holders of Priority Claims**

To the extent that the Holder of an Allowed Priority Claim receives a Distribution under the Plan, such Holder should recognize such Distribution as ordinary income and submit the appropriate withholdings based on that Holder's particular circumstances.

**c)      Consequences to Holders of Unsecured Claims**

Pursuant to the Plan, each Holder of an Allowed Unsecured Claim shall receive, on account of such Allowed Claim, a Pro Rata Distribution of Cash from the Unsecured Creditor Distribution.  To the extent the Holder of an Allowed Unsecured Claim receives less than full payment on account of such Claim, the Holder of such Claim may be entitled to assert a bad debt deduction or worthless security deduction with respect to such Allowed Unsecured Claim.

To the extent that any amount received by a Holder of an Allowed Unsecured Claim under the Plan is attributable to accrued but unpaid interest and such amount has not previously been included in the Holder's gross income, such amount should be taxable to the Holder as ordinary interest income.  Conversely, a Holder of an Allowed Unsecured Claim may be able to recognize a deductible loss (or, possibly, a write-off against a reserve for worthless debts) to the extent that any accrued interest on the debt instruments constituting such Claim was previously included in the Holder's gross income but was not paid in full by the Debtor.  Such loss may be ordinary, but the tax law is unclear on this point.

**2.      Certain U.S. Federal Income Tax Consequences Of The Plan To The Debtor**

At this time, the Debtor's taxable income, if any, is derived from reportable income generated by the business entities disclosed in the Schedules.  The Debtor believes that he will not be entitled to any significant refund for the 2021 tax year.

**THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX.   THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION.   ALL HOLDERS OF CLAIMS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL, OR FOREIGN TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.**

## V.    CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in sections 1129(a) or (b) of the Bankruptcy Code. These include the requirements that: the Plan must be proposed in good faith; at least one Impaired Class of claims must accept the Plan, without counting votes of Insiders; the Plan must distribute to each Creditor at least as much as the Creditor would receive in a chapter 7 liquidation case, unless the Creditor votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in section 1129, and they are not the only requirements for confirmation.

### A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A Creditor has a right to vote for or against the Plan only if that Creditor has a Claim that is both (1) Allowed or Allowed for voting purposes and (2) Impaired.

### 1.    Claims Entitled to Vote

Only a Creditor with an Allowed Claim has the right to vote on the Plan. Generally, a Claim is allowed if either (1) the Debtor have scheduled the Claim on the Debtor's schedules, unless the Claim has been scheduled as disputed, contingent, or unliquidated, or (2) the Creditor has filed a proof of claim, unless an objection has been filed to such proof of claim. When a Claim is not allowed, the Creditor holding the Claim cannot vote unless the Bankruptcy Court, after notice and hearing, either overrules the objection or allows the Claim for voting purposes pursuant to Bankruptcy Rule 3018(a).

As noted above, the holder of an Allowed Claim has the right to vote only if it is in a Class that is *Impaired* under the Plan. As provided in section 1124 of the Bankruptcy Code, a Class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 2.    Who is Not Entitled to Vote

The Holders of the following five types of Claims are *not* entitled to vote:

- Holders of Claims that have been disallowed by an order of the Court;

- Holders of other Claims that are not "Allowed Claims" unless they have been "Allowed" for voting purposes;

- Holders of Claims in unimpaired classes;

18

84N6319.DOCX

- Holders of Claims entitled to priority pursuant to Sections 507(a)(2), (a)(3), and (a)(8) of the Bankruptcy Code (Administrative Expense Claims and Priority Tax Claims); and

- Holders of Claims in Classes that do not receive or retain any value under the Plan.

### 3.   Who Can Vote in More than One Class

A Creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim, or who otherwise hold Claims in multiple Classes, is entitled to accept or reject the Plan in each capacity, and should cast one ballot for each Claim.

## B.   Votes Necessary to Confirm the Plan

If Impaired Classes exist, the Court cannot confirm the Plan unless (1) at least one Impaired Class of Creditors has accepted the Plan without counting the votes of any Insiders within that Class, and (2) all Impaired Classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes.

### 1.   Votes Necessary for a Class to Accept the Plan

A Class of Claims accepts the Plan if both of the following occur: (1) the Holders of more than one-half (1/2) of the Allowed Claims in the class, who vote, cast their votes to accept the Plan, and (2) the Holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims in the Class, who vote, cast their votes to accept the Plan.

### 2.   Treatment of Non-Accepting Classes

Even if one or more Impaired Classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting Classes are treated in the manner prescribed by section 1129(b) of the Bankruptcy Code.  A plan that binds non-accepting Classes is commonly referred to as a "cram down" plan.  The Bankruptcy Code allows the Plan to bind non-accepting Classes of Claims if it meets all the requirements for consensual confirmation except the voting requirements of section 1129(a)(8) of the Bankruptcy Code, does not "discriminate unfairly," and is "fair and equitable" toward each Impaired Class that has not voted to accept the Plan.

## VI.   ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtor believes that the Plan affords Holders of Claims the greatest opportunity for realization of any value on the Debtor's Assets.  The Plan also resolves a number of disputed issues that would be time consuming and costly to otherwise resolve. Therefore, the Debtor believes the Plan is in the best interests of Holders of Claims.  If the

84N6319.DOCX

Plan is not confirmed, however, the theoretical alternatives include (i) liquidation of the Debtor under chapter 7 of the Bankruptcy Code or (ii) alternative plans of liquidation under chapter 11 of the Bankruptcy Code.

## A.    Liquidation under Chapter 7

The Debtor believes that, under the Plan, each Holder of Impaired Claims will receive property of a value not less than the value such Holder would receive in a liquidation of the Debtor under chapter 7 of the Bankruptcy Code. The Debtor's belief is based primarily upon extensive consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to Holders of Claims, including, but not limited to (1) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a chapter 7 trustee and professional advisors to that trustee, (2) the erosion (or total elimination) in value of any remaining assets in a chapter 7 case in the context of the rapid liquidation required under chapter 7 and the "forced sale" atmosphere that would prevail, (3) the extensive time and litigation that would be required to resolve the disputed issues addressed by the compromises set forth in the Plan. The Debtor's belief is also based upon the Liquidation Analysis attached as **Exhibit "C."** As a result of the Debtor's minimal non-exempt property, the Debtor believes very little equity exists in their personal property that would be available for distribution to the Holders of Allowed Unsecured Claims, even in a chapter 7 liquidation.

## VII.    SUMMARY, RECOMMENDATION AND CONCLUSION

The Plan provides for an orderly and prompt distribution to Holders of Allowed Claims. In the opinion of the Debtor, the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for a larger distribution to the Debtor's creditors than would otherwise result in liquidation under chapter 7 of the Bankruptcy Code. In addition, any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to Holders of Allowed Claims than proposed under the Plan. *Accordingly, the Debtor recommends that Holders of Claims entitled to vote on the Plan support confirmation of the Plan and vote to accept the Plan.*

Brady L. Skinner

Dated: May 14, 2022

20

# Exhibit "A"

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

BRADY L. SKINNER,                                    Case No.:  8:22-bk-00445-CPM
                                                     Chapter 11

                    Debtor.
_____/


### **CHAPTER 11 PLAN OF BRADY L. SKINNER**

Kathleen L. DiSanto
Florida Bar No. 58512
**Bush Ross, P.A.**
Post Office Box 3913
Tampa, Florida 33601-3913
Telephone: (813) 224-9255
Facsimile: (813) 223-9620
Email:  kdisanto@bushross.com


COUNSEL FOR THE DEBTOR AND
DEBTOR-IN-POSSESSION

Dated:  May 14, 2022

## CHAPTER 11 PLAN UNDER CHAPTER 11
## OF THE UNITED STATES BANKRUPTCY CODE

This Chapter 11 Plan (the "**Plan**") is proposed by the Debtor, Brady L. Skinner (the "**Debtor**") under chapter 11 of the Bankruptcy Code.

Reference is made to the Disclosure Statement (as defined herein) for a discussion of the Debtor's history, business, historical financial information, projections, and property, and for a summary and analysis of the Plan. All Creditors should review the Disclosure Statement before voting to accept or reject the Plan. In addition, there are other agreements, documents, and pleadings on file with the Bankruptcy Court that may be referenced in the Plan and/or the Disclosure Statement and which are available for review.

## ARTICLE 1
## DEFINITIONS AND CONSTRUCTION

1.1    **General Provisions.**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. The words "**herein**," "**hereof**," and "**hereunder**" and other words of similar import refer to the Plan as a whole and not any particular section, subsection, or clause contained in the Plan, unless the context requires otherwise. Whenever it appears appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender include the masculine, feminine, and the neutral gender. Any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

1.2    **Defined Terms**.

In addition to such other terms as are defined in other sections of the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

1.2.1    "**217 Funding**" means 217 Funding, LLC.

1.2.2    "**Administrative Claims**" or "**Administrative Expense Claims**" or "**Administrative Expenses**" means any Claim constituting a cost or expense of administration of this case under sections 503(b) and 507(a)(1) of the Bankruptcy Code including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, including Professional Fee Claims, and any other actual and necessary expenses of the Debtor.

1.2.3    "**Administrative Claims Bar Date**" means the date established by the Bankruptcy Court by which Persons asserting claims against the Debtor that arose after the commencement of the case must file an application for the allowance and payment of such Administrative Claims.

1.2.4    "**Allowed**" means and includes, with respect to any Claim, (a) any Claim (other than a Disputed Claim), proof of which was timely filed or, by Order of the Bankruptcy Court, was not required to be filed or (b) any Claim (other than a Disputed Claim) that is listed in the Schedules as liquidated in the amount and not disputed or not Contingent, and, in each such case in (a) and (b) herein, as to which either (i) no objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court or (ii) the Claim has been Allowed by a Final Order of the Bankruptcy Court (but only to the extent so Allowed).

1.2.5    "**Allowed Amount**" means the dollar amount in which a Claim is Allowed; provided, however, that the Allowed Amount of a Claim shall not exceed the Estimated Amount of such Claim as determined pursuant to an Estimation Order.  No amount shall be Allowed for or on account of punitive damages, penalties, or post-petition interest on account of any Claim except as otherwise expressly specified in the Plan or provided by Final Order of the Bankruptcy Court.

1.2.6    "**Allowed Class __ Claim**" means an Allowed Claim in the particular Class(es) or categories described.

1.2.7    "**Assets**" means all assets of the Debtor, of any nature whatsoever, including, without limitation, the Personal Property, claims of right, interests in contracts, and every other form of property whether real or personal, tangible or intangible, and wherever located.

1.2.8    "**Ballot**" means the ballot accompanying the Disclosure Statement upon which Impaired Creditors shall have indicated their acceptance or rejection of the Plan, in accordance with the Plan and the Voting Instructions.

1.2.9    "**Bankruptcy Code**" means Title 11 of the Bankruptcy Reform Act of 1978, as set forth in sections 101, et seq. of Title 11 of the United States Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, and as otherwise amended from time to time, and applicable portions of Titles 18 and 28 of the United States Code, as amended from time to time.

1.2.10    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division.

1.2.11    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to this case, promulgated under 28 U.S.C. § 2075, the Local Rules, and Administrative Orders of the Bankruptcy Court.

84N6323.DOCX

1.2.12    "**Bar Date**" means the date fixed by Bankruptcy Court by which Persons asserting a Claim against the Debtor, and who are required to file a proof of claim on account of such Claim, must file a proof of claim or be forever barred from asserting a Claim against the Debtor or the Debtor's property and from voting on this Plan and/or sharing in distributions hereunder.

1.2.13    "**Business Day**" means any day other than a Saturday, Sunday or a day which in Tampa, Florida, is a legal holiday or any day designated in Bankruptcy Rule 9006(a) as a "legal holiday."

1.2.14    "**Cash**" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and other similar items.

1.2.15    "**Causes of Action**" means actions, causes of action, suits, claims, counterclaims, liabilities, obligations, defenses, and demands whatsoever, at law or in equity, held by the Debtor or the Estate.  As the context may require, Causes of Action shall also mean the judgments, awards, proceeds, settlement payments, and other recoveries that may be obtained on account of, or in compromise of, such Causes of Action.

1.2.16    "**Claim**" shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code.

1.2.17    "**Claims Objection Deadline**" means for each Claim, the later of (a) sixty (60) days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claim.

1.2.18    "**Claim Holder**" or "**Claimant**" means the Holder of a Claim.

1.2.19    "**Class**" means one of the classes of Claims or interests established under Article 2 of the Plan pursuant to section 1122 of the Bankruptcy Code.

1.2.20    "**Collateral**" means any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or stripping under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code, or applicable state or other law.

1.2.21    "**Confirmation**" means the entry of an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.2.22    "**Confirmation Date**" shall mean the date upon which the Confirmation Order is entered on the docket by the Clerk of the Bankruptcy Court.

1.2.23    "**Confirmation Order**" means the Order of the Bankruptcy Court confirming the Plan.

1.2.24    "**Consummation**" means the occurrence of the Effective Date.

84N6323.DOCX

1.2.25    "**Contingent Claim**" means a Claim that has not accrued and which is dependent upon a future event which may never occur.

1.2.26    "**Creditor**" means any Person who is the Holder of a Claim.

1.2.27    "**Debtor**" means Brady L. Skinner.

1.2.28    "**Debtor-in-Possession**" means the Debtor, when acting in the capacity of representative of his Estate in a chapter 11 case.

1.2.29    "**Deficiency Claim**" means an Unsecured Claim equal to the difference between the value of any Collateral securing an Allowed Secured Claim and the total amount of the Allowed Claim secured by such Collateral.

1.2.30    "**Disallowed**" shall mean, with respect to any Claim, or portion thereof, which (a) has been disallowed, in whole or part, by a Final Order of the Bankruptcy Court; (b) has been withdrawn by agreement of the Debtor and the Holder thereof, in whole or in part; (c) has been withdrawn unilaterally, in whole or in part, by the Holder thereof; (d) if listed in the Schedules in an amount of "$0.00", "Unknown", "_____" or identified as disputed, Contingent, or unliquidated and in respect of which a Proof of Claim has not been timely filed or deemed timely filed pursuant to a Final Order of the Bankruptcy Court; (e) has been reclassified, expunged, subordinated, or estimated to the extent that such reclassification, expungement, subordination, or estimation results in a reduction in the listed amount of any Proof of Claim; or (f) is evidenced by a Proof of Claim which has been filed but as to which such Proof of Claim was not timely or properly filed. In each case, a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination, or estimation.

1.2.31    "**Disclosure Statement**" means the *Disclosure Statement in Connection with the Chapter 11 Plan of Brady L. Skinner* (and all exhibits and schedules annexed thereto or referenced therein) that relate to the Plan, as such Disclosure Statement may be amended, modified, or supplemented, and that has been approved pursuant to section 1125 of the Bankruptcy Code.

1.2.32    "**Disputed Claim**" or "**Disputed Interest**" means a Claim or Interest, respectively, as to which a proof of Claim or proof of Interest has been filed or deemed filed and as to which an objection has been or may be timely filed by any party in interest entitled to do so, which objection, if timely filed, has not been withdrawn and has not been overruled or denied by a Final Order.  Prior to the time that an objection has been or may be timely filed for the purposes of the Plan, a Claim or Interest shall be considered a Disputed Claim or Disputed Interest, respectively, (a) if the amount of the Claim or Interest specified in the filed proof of Claim or proof of Interest exceeds the amount of the Claim or Interest scheduled by a Debtor as other than disputed, contingent or unliquidated; (b) if the priority of the Claim or Interest specified in the filed proof of claim or proof of Interest is of a more senior priority than the priority of the Claim or Interest scheduled by a Debtor; (c) if the Claim or Interest has been scheduled as disputed, contingent or unliquidated or

84N6323.DOCX

as being in the amount of "$_____", "Unknown", or $0.00; or (d) if the Claim or Interest has not been scheduled.

1.2.33     "**Distribution**" shall mean the distribution in accordance with this Plan of Cash or other property, as the case may be.

1.2.34     "**Distribution Date**" shall mean the date(s) upon which the Holders of Allowed Class 7 Claims shall receive the Unsecured Creditor Distribution, as determined by the Debtor, but shall not be more than sixty (60) months after the Effective Date.

1.2.35     "**District Court**" means the United States District Court for the Middle District of Florida, Tampa Division.

1.2.36     "**Effective Date**" means the first Business Day after the satisfaction or waiver of all conditions precedent to the Effective Date as set forth in the Plan.

1.2.37     "**Effective Date Cash**" means the Cash in the Debtor's Debtor-in-Possession account as of the Effective Date.

1.2.38     "**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

1.2.39     "**Estate**" means the estate created in this chapter 11 case pursuant to section 541 of the Bankruptcy Code.

1.2.40     "**Estimated Amount**" means the amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim against the Debtor which is contingent, unliquidated or disputed, for the purpose of: (a) allowance under section 502(c) of the Bankruptcy Code or (b) assisting the Bankruptcy Court in making the findings required for Confirmation of the Plan pursuant to section 1129(a)(7)(A)(ii) and (a)(11) and, if necessary, section 1129(b)(1) and (2) of the Bankruptcy Code.

1.2.41     "**Estimation Order**" means Order of the Bankruptcy Court or, where required by applicable law, the District Court, that determines the Estimated Amount of a Claim against the Debtor.

1.2.42     "**Final Decree**" means the decree contemplated under Bankruptcy Rule 3022.

1.2.43     "**Final Order**" means an order, judgment, ruling or other decree of the Bankruptcy Court or any other court of competent jurisdiction, which judgment, order or other decree (a) has not been reversed, stayed, modified or amended and as to which (i) the time to appeal, petition for certiorari or seek re-argument or rehearing has expired and (ii) no appeal, re-argument, petition for certiorari or rehearing is pending or any right to appeal, reargue, petition for certiorari or seek rehearing has been waived in writing in a manner satisfactory to the Debtor; or (b) if an appeal, re-argument, petition for certiorari or rehearing thereof has been denied, the time to take any further appeal or petition for certiorari or further re-argument or rehearing has expired.

84N6323.DOCX

1.2.44      "**Future Income**" means all earnings for services performed by the Debtor, or other compensation paid to or received by the Debtor after the Petition Date but before the Bankruptcy Case is closed, dismissed, or converted to another chapter of the Bankruptcy Code and notwithstanding any claim of exemption under applicable state or federal law.

1.2.45      "**Governmental Unit**" or "**Governmental Entity**" means any foreign, federal, state, municipal, or other local governmental unit, including without limitation those defined under section 101(27) of the Bankruptcy Code.

1.2.46      "**Holder**" means a Person or Entity holding an Interest or Claim.

1.2.47      "**Homestead**" means the Debtor's home and the real property located at 6911 Point of Rocks Road, Sarasota, Florida 34242.

1.2.48      "**Impaired**" means impaired as defined in section 1124 of the Bankruptcy Code.

1.2.49      "**Impaired Class**" means any of Classes 4, 5, 6, and 7 as set forth in Article 4 of the Plan.

1.2.50      "**Impaired Creditor**" means the Holder of a Claim in an Impaired Class.

1.2.51      "**Insider**" means an insider of the Debtor, as defined in section 101(31) of the Bankruptcy Code.

1.2.52      "**IRS**" means the Internal Revenue Service.

1.2.53      "**JGAR**" means JGAR Financial, LLC.

1.2.54      "**Lien**" means a charge against or interest in property to secure payment of a debt or performance of an obligation as defined in section 101(37) of the Bankruptcy Code.

1.2.55      "**Order**" means an order or judgment of a court.

1.2.56      "**Ordinary Course Administrative Claim**" means an Administrative Claim incurred in the ordinary course of business of the Debtor or ordinary living expenses of the Debtor.

1.2.57      "**Person**" means any individual, corporation, general partnership, limited partnership, limited liability company, association, joint stock company, joint venture, Estate, business trust, governmental unit, creditors committee, or other Entity.

1.2.58      "**Personal Property**" means those tangible and intangible Assets of the Debtor other than real property.

1.2.59      "**Petition Date**" means February 3, 2022, the date on which the Debtor filed his voluntary petition for relief under chapter 11 of the Bankruptcy Code.

84N6323.DOCX

1.2.60    "**Plan**" means this chapter 11 plan, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules.

1.2.61    "**Plan Documents**" means any documents, agreements, and instruments to be executed by the Debtor and other parties in order to effect the transactions contemplated in this Plan.

1.2.62    "**Plan Duration Period**" means (i) the sixty month period after the Effective Date or (ii) the period of time from the Effective Date until the Debtor has paid the Plan Payment, whichever is shorter.

1.2.63    "**Plan Payment**" means the payment(s) made by the Debtor for Distribution to the Holders of Allowed Claims as provided under this Plan in an amount sufficient to pay all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Claims, and to fully fund the Unsecured Creditor Distribution.

1.2.64    "**Pledged Assets**" means all of the Debtor's non-exempt Assets pledged to 217 Funding.

1.2.65    "**Priority Claim**" means a Claim entitled to priority under section 507 of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

1.2.66    "**Priority Tax Claim**" means a Claim entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

1.2.67    "**Professional**" means a Person retained or to be compensated pursuant to sections 326, 327, 328, 330, 503(b)(2) or (4), 1103 or 1107(b) of the Bankruptcy Code.

1.2.68    "**Professional Fees**" or "**Professional Fee Claim**" means those fees and expenses claimed by Professionals retained by the Debtor through a Bankruptcy Court order pursuant to sections 330, 331 and/or 503 of the Bankruptcy Code, and unpaid as of the Confirmation Date.

1.2.69    "**Projected Disposable Income**" means the amount of Debtor's projected monthly income for the period beginning with the Effective Date and continuing sixty (60) months thereafter as calculated in Exhibit "D" to the Disclosure Statement and in accordance with section 1129(a)(15) of the Bankruptcy Code.

1.2.70    "**Pro Rata**" or "**Pro Rata Share**" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in such Class.

1.2.71    "**Reorganized Debtor**" means Brady L. Skinner on and after the Effective Date as reorganized pursuant to the Plan.

1.2.72    "**Schedules**" means the Schedule of Assets and Liabilities filed by the Debtor in connection with this chapter 11 case, as the same have been or may be amended or supplemented from time to time prior to the Effective Date.

1.2.73    "**Secured Claim**" means a Claim, including interest, fees and charges to the extent allowable pursuant to section 506(b) of the Bankruptcy Code, that is secured by a Lien on property in which the Estate has an interest, or that is subject to set-off under section 553 of the Bankruptcy Code, to the extent of the value of the Claimant's interest in the Estate's interest in such property, or to the extent of the amount subject to set-off, as applicable, as determined pursuant to section 506(a) and, if applicable, section 1129(b)(2)(a)(i)(II) of the Bankruptcy Code.  Any difference between the amount of any Creditor's Allowed Claim and its Allowed Secured Claim shall be a Deficiency Claim as defined in section 1.2.29 above.

1.2.74    "**Secured Tax Claim**" means a Secured Claim of a Governmental Unit for pre-petition taxes or the Secured Claim asserted by the holder of any certificate for unpaid real property taxes issued by a Governmental Unit.

1.2.75    "**Surrendered Asset**" means any Asset of the Debtor or the Estate to be surrendered, transferred, or conveyed to a Holder of a Secured Claim pursuant to this Plan.

1.2.76    "**Undeliverable Distribution**" means a Distribution of Cash that is returned to the Debtor as undeliverable or is otherwise unclaimed for ninety (90) days after the date such Distribution was made.

1.2.77    "**Unimpaired**" means a Claim that is unimpaired within the meaning of section 1126 of the Bankruptcy Code.

1.2.78    "**Unsecured Claim**" means a Claim that is neither secured nor entitled to priority under the Bankruptcy Code or a Final Order of the Bankruptcy Court, including, but not limited to:  (a) any Claim arising from the rejection of an executory contract or unexpired lease under section 365 of the Bankruptcy Code and (b) any portion of a Claim that is an Allowed Deficiency Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.2.79    "**Unsecured Creditor Distribution**" means an amount equal to the aggregate payments to be made to the Holders of Allowed Unsecured Claims as provided in section 4.7 of the Plan.  The Unsecured Creditor Distribution shall be funded, at the Debtor's sole discretion, by Future Income, an institutional or non-institutional loan, or through the liquidation of the Debtor's Assets.

1.2.80    "**U.S. Bank**" means Towd Point Mortgage Trust 2018-2, U.S. Bank National Association, as Indenture Trustee, Serviced by Select Portfolio Servicing, Inc.

1.2.81    "**U.S. Trustee**" means the Office of the United States Trustee for the Middle District of Florida, Tampa Division.

1.2.82    "**U.S. Trustee Fees**" means the fees required to be paid by 28 U.S.C. § 1930(a)(6).

84N6323.DOCX

1.2.83    "**Voting Deadline**" means the date by which Ballots voting for or against the Plan must be received, pursuant to order of the Bankruptcy Court.

1.2.84    "**Voting Instructions**" means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "VOTING PROCEDURES."

1.2.85    "**Wells Fargo**" means Wells Fargo Auto Finance.

1.3    **Interpretation, Rules of Construction, Computation of Time, and Choice of Law.**

1.3.1    The provisions of the Plan and of any contract, instrument or other agreement or document created in connection with the Plan, as an adjunct or supplement thereto, or required thereby, shall control over any descriptions thereof contained in the Disclosure Statement.

1.3.2    The provisions of the Plan shall control over the provisions of any contract, instrument, or other agreement or document, other than the Confirmation Order, created in connection with the Plan, as an adjunct or supplement thereto, or required thereby.

1.3.3    Any reference in the Plan to a contract, document, instrument, release, certificate, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions.

1.3.4    Any reference in the Plan to an existing document or exhibit means such document or exhibit as it may have been amended, modified, or supplemented as of the Effective Date.

1.3.5    Any exhibits or amendments to the Plan are incorporated into the Plan and shall be deemed to be included in the Plan.

1.3.6    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE 2
## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to section 1129(a)(1) of the Bankruptcy Code, this Plan designates the following classes of Claims.  Allowed Administrative Expense Claims and Allowed Priority Tax Claims against the Debtor are not classified for purposes of voting on or receiving Distributions under the Plan, and the Holders of such Claims are not required to vote on this Plan.

2.1    **Class 1:  Priority Claims.**

This Class consists of all Allowed Claims entitled to priority under section 507 of the Bankruptcy Code (except Administrative Expense Claims under section 507(a)(2), Priority Tax Claims under section 507(a)(8), and domestic support obligations under section 507(a)(1)).

2.2     **Class 2:  Secured Claim of U.S. Bank (Homestead).**

This Class consists of the Allowed Secured Claim of U.S. Bank, secured by a first mortgage Lien on the Debtor's Homestead.

2.3     **Class 3: Secured Claim of Sarasota County Property Tax Collector (Homestead).**

This Class consists of the Allowed Secured Claim of the Sarasota County Property Tax Collector, secured by a lien on the Homestead, if any.

2.4     **Class 4:  Secured Claim of Wells Fargo.**

This Class consists of the Allowed Secured Claim of Wells Fargo, secured by a Lien on the Debtor's 2018 Mercedes-Benz GLC Class.

2.5     **Class 5:  Secured Claim of 217 Funding (All Asset Pledge).**

This Class consists of the Allowed Secured Claim of 217 Funding, secured by a pledge of all of the Debtor's Assets.

2.6     **Class 6:  Secured Claim of JGAR (Judgment Lien).**

This Class consists of any Allowed Secured Claim of JGAR on the Debtor's Personal Property pursuant to section 55.10 of the Florida Statutes by the recording of a Judgment Lien Certificate with the Judgment Lien Registry of the state of Florida or any lien on real property created by the recording of a certified copy of the final judgment in the public records of any county in the state of Florida.

2.7     **Class 7:  General Unsecured Claims.**

This Class consists of all Allowed General Unsecured Claims that are not otherwise classified, including any portion of a Claim filed as a Secured Claim that is determined to be an Allowed Unsecured Claim.

**ARTICLE 3**
**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,**
**U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS**

3.1     **Administrative Expense Claims**.

3.1.1     **In General.**

This is the Class of Administrative Claims allowable under section 503 and entitled to priority under section 507(a)(2) of the Bankruptcy Code, including unpaid fees payable to the U.S. Trustee under 28 U.S.C. §1930, the fees of Debtor's counsel, and other Professional Fee Claims.  Unless the Holder agrees to different treatment, all Administrative Claims, other than Ordinary Course Administrative Claims, will be paid by

84N6323.DOCX

the Debtor in full, in Cash on the later of (a) on or as soon as practicable after the Effective Date, or (b) if an Administrative Claim is not Allowed as of the Effective Date, then within fifteen (15) days after such Administrative Claim becomes an Allowed Administrative Claim.

### 3.1.2    Allowed Ordinary Course Administrative Claims.

Allowed Ordinary Course Administrative Claims will be paid pursuant to the terms and conditions giving rise to such Administrative Claim, without any further action by the Holders of such Ordinary Course Administrative Expense Claims.

### 3.1.3    Professional Compensation and Expense Reimbursement Claims.

Except as otherwise provided in this Article with respect to Ordinary Course Administrative Claims or Order of the Bankruptcy Court, all Persons seeking an award by the Bankruptcy Court of a Professional Fee Claim, or of compensation for services rendered to the Debtor or reimbursement of expenses incurred through and including the Confirmation Date under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, shall file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred no later than fourteen (14) days after the entry of an order by the Bankruptcy Court conditionally approving the Debtor's Disclosure Statement, or as otherwise ordered by the Bankruptcy Court.  Such applications shall include an estimate of any additional compensation or reimbursement that is contemplated to be requested for services rendered and costs incurred through the Confirmation Date and be supplemented at the Confirmation Hearing as needed.  If such an award is approved by the Bankruptcy Court, it shall be fully paid in Cash to the extent Allowed by the Bankruptcy Court (i) on the later of the Effective Date or the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, or (ii) upon such other terms as may be mutually agreed upon between such Holder of an Allowed Administrative Claim and the Debtor.  All Professional Fees for services rendered in connection with this case after the Effective Date, including, without limitation, those relating to the occurrence of the Effective Date, the prosecution of Causes of Action preserved hereunder and the resolution of Disputed Claims and, shall be paid by the Debtor upon receipt of an invoice therefore, or on such other terms as such parties may agree to, without the need for further Bankruptcy Court authorization or entry of a Final Order.  If the Debtor and any Professional cannot agree on the amount of post-Effective Date fees and expenses to be paid to such Professional, such amount shall be determined by the Bankruptcy Court.

## 3.2    United States Trustee Fees.

All U.S. Trustee Fees will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid by the Debtor on the Effective Date.  Any U.S. Trustee Fees owed for periods occurring after the Effective Date will be timely paid by the Reorganized Debtor.

84N6323.DOCX

3.3     **Priority Tax Claims.**

Each Holder of an Allowed Priority Tax Claim shall receive on account of such Allowed Priority Tax Claim regular installment payments in Cash in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.  Holders of Allowed Priority Tax Claims shall receive interest on account of their Allowed Priority Tax Claims at the rate established for delinquent tax obligations pursuant to 26 U.S.C. § 6621; provided, however, that if the Holder of such Allowed Priority Tax Claim is a city, county, or state, such Holder shall receive interest on account of its Allowed Priority Tax Claim at the applicable statutory rate under state law.  Such amounts will be paid by the Debtor on the later of the Effective Date or the date that such claim becomes an Allowed Priority Tax Claim. Notwithstanding the above, each Holder of an Allowed Priority Tax Claim may be paid under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Debtor or the Reorganized Debtor.

# ARTICLE 4
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Classified Claims and Interests shall be treated as follows under this Plan:

4.1     **Class 1:  Priority Claims.**  Class 1 consists of all Allowed Claims entitled to priority under section 507 of the Bankruptcy Code (except Administrative Expense Claims under section 507(a)(2), Priority Tax Claims under section 507(a)(8), and domestic support obligations under section 507(a)(1)).  Class 1 Priority Claims, if any, will be paid in full on the Effective Date of this Plan, in Cash, or upon such other terms as may be agreed upon by the Holder of the Claim and the Debtor or as otherwise ordered by the Bankruptcy Court.  Class 1 is Unimpaired, and the Holders of Allowed Class 1 Claims are not entitled to vote to accept or reject the Plan.

4.2     **Class 2:  Secured Claim of U.S. Bank (Homestead).**  This Class consists of the Allowed Secured Claim of U.S. Bank, secured by a first mortgage Lien on the Debtor's Homestead.  After the Effective Date, the Debtor will pay the required monthly mortgage payments to U.S. Bank as such payments become due under the terms of the existing promissory note and mortgage.  The existing promissory note and mortgage and any and all documents, filings, or instruments evidencing, arising out of, or relating to the claim and indebtedness owed by the Debtor to U.S. Bank on account of its Allowed Class 2 Claim shall remain in full force and effect, except to the limited extent they are specifically and expressly modified in this Plan.  Any arrearage will be cured by the Debtor paying an additional amount equal to one-half (1/2) of the monthly payment at the time the Debtor makes the regular monthly mortgage payment.  U.S Bank shall defer collection of any attorney's fees and costs incurred by U.S. Bank with respect to the obligation secured by the Debtor's Homestead until the time that the Unsecured Creditor Distribution is distributed to the Holders of Allowed Class 7 Claims, at which time any claim for attorney's fees and costs shall be paid.  U.S. Bank shall retain its Lien on the Homestead on account of its first mortgage.  Class 2 is Impaired, and the Holder of any Allowed Class 2 Claim is entitled to vote to accept or reject the Plan.

4.3     **Class 3:  Secured Claim of Sarasota County Property Tax Collector (Homestead).** This Class consists of the Allowed Secured Claim of the Sarasota County Property Tax Collector, secured by a lien on the Homestead, if any.  The Class 3 Secured Tax Claim secured by a Lien on

84N6323.DOCX

the Homestead will be paid by the Debtor on the date such Secured Tax Claim becomes due under applicable law. The Holder of the Class 3 Secured Tax Claim shall retain all legal, equitable, and contractual rights with respect to the Homestead. Class 3 is Unimpaired, and the Holder of any Allowed Class 3 Claim is not entitled to vote to accept or reject the Plan.

4.4    **Class 4: Secured Claim of Wells Fargo.** This Class consists of the Allowed Secured Claim of Wells Fargo, secured by a Lien on the 2018 Mercedes-Benz GLC Class. After the Effective Date, the Debtor will pay the required monthly payments to the Holder of the Allowed Class 4 Secured Claim of Wells Fargo as such payments become contractually due. The existing promissory note and any and all documents, filings, or instruments evidencing, arising out of, or relating to the claim and indebtedness owed by the Debtor to Wells Fargo shall remain in full force and effect, except to the limited extent they are specifically and expressly modified in this Plan. Any arrearage will be cured by the Debtor paying an additional amount equal to one-half (1/2) of the monthly payment at the time the Debtor makes the regular monthly payment. Wells Fargo shall waive collection of any attorney's fees and costs incurred by Wells Fargo with respect to the obligation secured by the 2018 Mercedes-Benz GLC Class. Wells Fargo shall retain its Lien in the 2018 Mercedes-Benz GLC Class. Class 4 is Impaired, and the Holder of any Allowed Class 4 Claim are entitled to vote to accept or reject the Plan.

4.5    **Class 5: Secured Claim of 217 Funding.** This Class consists of the Allowed Secured Claim of 217 Funding, secured by a pledge of all of the Debtor's assets. The amount of 217 Funding's Allowed Secured Claim shall equal $5,000.00, at an interest rate of 4.00% per annum, or an amount agreed upon by 217 Funding and the Debtor, or an amount determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code. The balance of 217 Funding's Allowed Claim shall be treated in accordance with Class 7. As treatment of 217 Funding's Allowed Secured Claim, 217 Funding shall retain its lien on the Debtor's assets. Class 5 is Impaired, and the Holder of the Allowed Class 5 Claim is entitled to vote to accept or reject the Plan.

(a)  Payment. As treatment of 217 Funding's Allowed Secured Claim, 217 Funding shall retain its lien on the Debtor's assets and shall receive payment in full equal to the Allowed amount of its Secured Claim as follows:

Beginning on the date that is thirty days after the Effective Date and on a monthly basis thereafter, the Debtor shall pay to 217 Funding the amount of $400.00 per month, until the 15th day of December 2022, at which time the remaining principal balance together with any interest accrued thereon shall be fully due and payable without demand.

(b)  Default. The Reorganized Debtor shall be in default under the Plan upon the failure to make any payment under the Plan which is not timely cured as provided in this subsection (b) (an "**Uncured Default**"). Upon any payment default, 217 Funding shall send written notice to the Debtor of such payment default via email and via certified mail to the notice addresses provided in section 13.6 of the Plan. Following receipt of such written notice of payment default, the Debtor or Reorganized Debtor shall have thirty (30) days from the written notice of default to cure any default. The failure to cure any such payment default shall constitute an Uncured Default.

84N6323.DOCX

(c) <u>Remedies on Default.</u>  Upon the occurrence of an Uncured Default, 217 Funding shall be entitled to exercise any rights and remedies as to its lien on the Pledged Assets.  Any payments made to 217 Funding under the Plan shall be credited to the amount due to 217 Funding on account of its Allowed Secured Claim and shall reduce the amount to which 217 Funding is entitled to recover on account of such Claim through the remedies provided in subsection (c).

(d) <u>Release of Liens.</u>  Upon payment in full of 217 Funding's Allowed Secured Claim pursuant to the terms of the Plan, 217 Funding's Allowed Secured Claim shall be deemed satisfied and its lien shall be extinguished and shall no longer encumber the Pledged Assets.

(e) <u>Pre-Payment Explicitly Authorized.</u>  The Debtor or Reorganized Debtor shall be entitled, at any time and without penalty, to pay off the then-outstanding balance of 217 Funding's Allowed Secured Claim.

(f) <u>Miscellaneous.</u>  Notwithstanding the above, 217 Funding may be paid under such other terms as may be agreed upon by 217 Funding and the Debtor or the Reorganized Debtor as the case may be.

4.6    **Class 6:  Secured Claim of JGAR (Judgment Lien).**  This Class consists of any Allowed Secured Claim of JGAR on the Debtor's Personal Property pursuant to section 55.10 of the Florida Statutes by the recording of a Judgment Lien Certificate with the Judgment Lien Registry of the state of Florida or any lien on real property created by the recording of a certified copy of the final judgment in the public records of any county in the state of Florida.  JGAR's Allowed Class 6 Claim, if any, shall be in an amount agreed upon by JGAR and the Debtor or an amount determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code.  The balance of JGAR's Allowed Claim shall be treated in accordance with Class 7.  Class 6 is Impaired, and the Holder of any Allowed Class 6 Claim is entitled to vote to accept or reject the Plan.

4.7    **Class 7:  General Unsecured Claims.**  This Class consists of all Allowed General Unsecured Claims that are not otherwise classified, including any portion of a Claim filed as a Secured Claim that is determined to be an Allowed Unsecured Claim and any Deficiency Claims.  The Holder(s) of Allowed Unsecured Claim(s), shall share Pro Rata in the Unsecured Creditor Distribution.  The Pro Rata share of any Distributions from the Unsecured Creditor Distribution shall calculated as a fraction of the amount of any such Distribution, the numerator of which shall be the Allowed Amount of such Allowed Class 7 Claim, and the denominator shall be the aggregate Allowed Amount of all Allowed Class 7 Claims.  Within six months of the Effective Date, the Unsecured Creditor Distribution shall be funded with $20,000.00 and distributed to the Holders of Allowed Class 7 Unsecured Claims within ninety days of the funding of the Unsecured Creditor Distribution.  Class 7 is Impaired, and the Holders of Allowed Class 7 Claims are entitled to vote to accept or reject the Plan.

84N6323.DOCX

## ARTICLE 5
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.1    **Delay of Distribution on a Disputed Claim**.

No Distribution will be made on account of a Disputed Claim unless and until such Claim is an Allowed Claim.  The Pro Rata Share of any Distribution that would otherwise be made on account of a Disputed Claim shall be maintained by the Debtor until such Disputed Claim becomes an Allowed Claim or a Disallowed Claim.

5.2    **Settlement of Disputed Claims**.

The Debtor will have the power and authority to settle and compromise any Disputed Claim with Bankruptcy Court approval and in compliance with Rule 9019 of the Bankruptcy Rules.

5.3    **Determination of Allowed Amounts.**

The treatment prescribed for Claims in the foregoing Article 4 of this Plan shall refer exclusively to the Allowed Amount of each respective Claim.  To the extent any Claim is not an Allowed Claim as of the Effective Date, the treatment prescribed to such Claim shall be deemed effective as of the date of the determination of such Claim by agreement or final order of the Bankruptcy Court.

## ARTICLE 6
## PROVISIONS FOR EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

6.1    **Assumed Executory Contracts and Unexpired Leases.**

The Debtor will be deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed or rejected by separate order of the Bankruptcy Court or under this Article as of the Effective Date of this Plan.  A Proof of Claim arising from the rejection of an executory contract or unexpired lease must be filed no later than thirty (30) days after the earlier of (a) the date of the entry of the order by the Bankruptcy Court authorizing the rejection of such executory contract or unexpired lease; or (b) the Confirmation Date.

## ARTICLE 7
## MEANS OF EXECUTION

7.1    **Overview of the Plan**.

From Effective Date Cash, the Debtor shall pay (i) Allowed Professional Fee Claims (unless otherwise agreed by the Holder of such Claim) and (ii) U.S. Trustee Fees incurred through the Effective Date.  The Debtor will make all payments to the Holders of Secured Claims from Future Income or income generated from his exempt retirement account or Social Security benefit payments.  The Unsecured Creditor Distribution shall be funded, at the Debtor's sole discretion,

by Future Income, an institutional or non-institutional loan, or through the liquidation of the Debtor's Assets.

## 7.2   Board of Directors and Executive Officers of the Reorganized Debtor.

Since the Debtor is an individual, he does not have a board or directors or executive officers.

## 7.3   Conveyance of Property on Account of Secured Claims.

All conveyance and transfer of property securing Allowed Secured Claims provided for under this Plan shall be (i) without warranty or merger of any lien and/or title, through quit claim deed, bill of sale, assignment, stock power, or other method of conveyance or transfer appropriate to the type of property conveyed or (ii) through consent to judgment by foreclosure or disposition under Article 9 of the appropriate commercial code. Upon the Effective Date, the automatic stay shall terminate with respect to any property to be surrendered or conveyed to the Holder of a Secured Claim.

## 7.4   Set-offs.

Except as otherwise provided in the Plan, agreements entered into in connection therewith, the Confirmation Order, or agreements previously approved by Final Order of the Bankruptcy Court, and without limitation as to the applicability of section 502(d) of the Bankruptcy Code, the Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim before any Distribution is made on account of such Allowed Claim, any and all of the Claims, rights and causes of action of any nature that may be asserted against the Holder of such Allowed Claim; provided, *however,* that neither the failure to effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or release of any such Claims, rights or causes of action against such Holder.

## 7.5   Debtor Action.

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan involving any action or conveyance by the Debtor shall be deemed to be authorized and approved, and the Debtor shall be authorized to take any action described or contemplated hereunder.

## 7.6   Causes of Action.

On the Effective Date, except to the extent that a Creditor or other third party has been specifically released from any Cause of Action that the Estate may have by the terms of the Plan or by order of the Bankruptcy Court, the Reorganized Debtor will retain all Causes of Action including, without limitation, any and all Claims listed in the Schedules. Except as otherwise set forth in this Plan, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will result in the waiver or release of any of the Estate's Causes of Action against such Creditor. Confirmation of the Plan and entry of the Confirmation Order is not intended to and will not be deemed to have any res judicata, judicial estoppel, or other effect that in any way precludes

84N6323.DOCX

or inhibits the prosecution of Causes of Action following confirmation of the Plan. The Debtor may hold Causes of Action against various creditors pursuant to chapter 5 of the Bankruptcy Code. The Debtor may pursue potential Causes of Action. Following the Effective Date, the Reorganized Debtor retains the right to pursue, resolve, settle, or abandon Causes of Action.

## ARTICLE 8
## PROVISIONS GOVERNING DISTRIBUTIONS

8.1   **Unclaimed or De Minimis Distributions.**

If the Holder of an Allowed Claim fails to negotiate a check issued to such Holder within ninety (90) days of the date such check was issued, then the Debtor may provide written notice to such Holder stating that unless such Holder negotiates such check within thirty (30) days of the date of such notice, the amount of Cash attributable to such check will be deemed to be unclaimed, such Holder's Claim will no longer be deemed to be Allowed, and such Holder will be deemed to have no further Claim in respect of such check and will not participate in any further Distributions under the Plan. De minimis Distributions less than five dollars ($5.00) shall not be made, and shall become unclaimed funds. Unclaimed funds shall vest in the Reorganized Debtor.

8.2   **Determination of Claims.**

Objections to Claims shall be filed by the Debtor or any party in interest within sixty (60) days of the Confirmation Date. Disputed Claims will be fixed or liquidated in the Bankruptcy Court, before or after the Confirmation Date, as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in administration, such Claim will be estimated by the Bankruptcy Court for purposes of allowance and Distribution. Upon receipt of a timely filed Proof of Claim, the Debtor or other party in interest may file a request for estimation along with their objection to the Claim set forth therein. The determination of Claims in estimation hearings will be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution. Procedures for specific estimation hearings, including provisions for discovery, will be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

## ARTICLE 9
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

9.1   **Conditions Precedent.**

As a condition precedent to the Effective Date, the Confirmation Order shall have been entered by the Bankruptcy Court, duly entered on the docket for the Bankruptcy Case by the Clerk of the Bankruptcy Court, and shall have become a Final Order. Notwithstanding any other provision of the Plan or Confirmation Order, the Effective Date of the Plan shall not occur unless until each of the conditions precedent has been satisfied or has been waived in a writing executed by the Debtor.

84N6323.DOCX

**ARTICLE 10**
**DISCHARGE, RELEASE, LIMITATION**
**OF LIABILITY, AND GENERAL INJUNCTION**

10.1    **Discharge of Claims.**

The entry of the Confirmation Order and the completion of the Plan Payment shall operate as a discharge, pursuant to section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, of any and all debts of, Claims of any nature whatsoever against the Debtor that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on, or after the Petition Date, except and to the extent such debt is determined to be excepted from discharge under section 523 of the Bankruptcy Code. Without limiting the generality of the foregoing, upon completion of the payments under the Plan, the Debtor will be discharged from any debt that arose prior to the Effective Date and from any and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such debt was filed pursuant to section 501 of the Bankruptcy Code, (b) a Claim based on such debt is an Allowed Claim pursuant to section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan.

Except as otherwise expressly provided in the Plan or in the Confirmation Order, upon the entry of a discharge and completion of the Plan Payment, all Persons and Entities, including all Holders of a Claim, will be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor or any of the Debtor's successors and assigns, or the Assets or Property, any other or further Claims, debts, rights, Causes of Action, remedies, or Liabilities based upon any act, omission, document, instrument, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan.

The entry of the Confirmation Order and the completion of the Plan Payment shall constitute a judicial determination of the discharge of all such Claims and other debts and Liabilities against the Debtor, pursuant to sections 524 and 1141 of the Bankruptcy Code except to the extent of any debt excepted from discharge under section 523 of the Bankruptcy Code, and such discharge will void any judgment obtained against one or both the Debtor, at any time, to the extent that such judgment relates to a discharged Claim, Liability, or debt.

10.2    **Post-Petition Disclosures and Solicitation.**

To the extent provided under sections 1123(b)(3)(A) and 1125(e) of the Bankruptcy Code, and applicable law, the Debtor and the Debtor's Professionals (acting in such capacity), and their respective successors and assigns, will neither have nor incur any Liability whatsoever to any Person or other Entity for any act taken or omitted in good faith in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Case.

10.3    **No Liability for Tax Claims.**

Unless a taxing Governmental Authority has asserted a Claim against the Debtor by properly filing a Proof of Claim before the Bar Date established therefore, no Claim of such Governmental Authority will be Allowed against the Debtor for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the Debtor or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

**ARTICLE 11**
**RETENTION OF JURISDICTION**

11.1    **General Retention.**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Bankruptcy Case is closed, the Bankruptcy Court will retain jurisdiction of the Bankruptcy Case necessary to ensure that the purposes and intent of the Plan are carried out.

11.2    **Specific Purposes.**

In addition to the general retention of jurisdiction set forth herein, after Confirmation of the Plan and until the Bankruptcy Case is closed, the Bankruptcy Court will retain jurisdiction of the Bankruptcy Case for the following specific purposes:

11.2.1    to determine any and all cases, controversies, suits, Causes of Action, or disputes arising under or relating to the Plan or the Confirmation Order (including regarding the effect of any release, discharge, injunction or indemnification provisions provided for herein or affected hereby and regarding whether conditions to the Consummation and/or Effective Date of the Plan have been satisfied) and to enforce the obligations under the Plan;

11.2.2    to determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under sections 330, 331, or 503(b) of the Bankruptcy Code arising out of or relating to the Bankruptcy Case; provided, however, that this retention of jurisdiction will not be considered to require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of Professionals employed by the Debtor for services rendered and reimbursement of costs incurred after the Effective Date unless an objection to such fees and expenses has been filed by the Debtor;

11.2.3    to determine any and all motions, applications, adversary proceedings, contested or litigated matters, Causes of Action, and any other matters involving the Debtor, commenced in connection with, or arising during, the Bankruptcy Case and pending on the Effective Date, including approval of proposed settlements thereof;

11.2.4    to enforce, interpret, and administer the terms and provisions of the Plan;

84N6323.DOCX

11.2.5    to modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

11.2.6    to consider and act on all objections to Claims, counterclaims, and the compromise and settlement of any Claim against the Debtor or the Estate;

11.2.7    to correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary change or modification in or to the Disclosure Statement, the Plan, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

11.2.8    to resolve any disputes concerning any release of a non-debtor hereunder or the injunction against acts, employment of process, or actions against such non-debtor arising hereunder;

11.2.9    to enforce all orders, judgments, injunctions, and rulings entered in connection with the Bankruptcy Case;

11.2.10    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

11.2.11    to determine all questions and disputes regarding title to the Assets of the Debtor or the Estate or disputes arising pre-petition between the Debtor and all parties over which this Court has jurisdiction;

11.2.12    to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits, development rights, impact fees, and similar or related matters with respect to the Debtor arising on or prior to the Effective Date or arising on account of transactions contemplated by the Plan;

11.2.13    to resolve any determinations which may be requested by the Debtor of any unpaid or potential tax liability or any matters relating thereto under sections 505 and 1146(a) of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the Effective Date;

11.2.14    to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person or other Entity with Consummation, implementation, or enforcement of the Plan or the Confirmation Order;

84N6323.DOCX

11.2.15    to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

11.2.16    to determine any other matters that may arise in connection with or relating to the Plan, the Distributions from the Unsecured Creditor Distribution, the Disclosure Statement, or the Confirmation Order;

11.2.17    to determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

11.2.18    to enter an order concluding and terminating the Bankruptcy Case.

## ARTICLE 12
## MODIFICATION OF PLAN AND
## CONFIRMATION OVER OBJECTIONS

**12.1    Modification of the Plan.**

The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan as modified and the Disclosure Statement meet applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

**13.1    Vesting of Assets.**

On the Effective Date, all Interests of the Estate in any property of the Debtor will terminate.  Title and ownership of any Assets shall vest in the Reorganized Debtor free and clear of any and all Liens, debts, and obligations of every kind and nature, except as otherwise provided in the Plan.

**13.2    Section 1146 Exemption.**

Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the revesting, transfer, or sale of any real or personal property of, by, or in the Debtor pursuant to, in implementation of or as contemplated by the Plan, will not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.

**13.3    No Admissions.**

The Plan provides for the resolution, settlement, and compromise of Claims against the Debtor.  Nothing herein will be construed to be an admission of any fact or otherwise to be binding upon the Debtor or any other Person in any manner prior to the Effective Date.

84N6323.DOCX

**13.4    Revocation or Withdrawal of the Plan.**

The Debtor reserves the right to revoke or withdraw the Plan, or any portion thereof, prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan, then the Plan will be deemed null and void with respect to the Debtor, and nothing contained in the Plan will be deemed to (a) constitute a waiver or release of any Claims by or against the Debtor in the Bankruptcy Case or any other Person or other Entity, or (b) prejudice in any manner the rights of the Debtor or any other Person or other Entity in any further proceedings involving the Debtor or the Bankruptcy Case.

**13.5    Headings.**

The headings and table of contents used in the Plan are for convenience and reference only and will not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

**13.6    Notices.**

All notices, requests, and other documents in connection with the Plan or required by the Plan to be served will be in writing and will be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to the Debtor and to Bush Ross, P.A. and via e-mail at the following addresses:

If to the Debtor:

**Brady L. Skinner**
6911 Point of Rocks Road
Sarasota, Florida 34242

With a copy to:

**Bush Ross, P.A.**
Post Office Box 3913
Tampa, Florida 33601-3913
Attn: Kathleen L. DiSanto, Esq.
Email: kdisanto@bushross.com

**13.7    Limitation on Allowance.**

No post-petition interest, attorney's fees, costs, punitive damages, penalties, exemplary damages, treble damages, late charges, or interest will be paid with respect to any Claim except as specified herein or as Allowed by a Final Order of the Bankruptcy Court.

**13.8    Estimated Claims.**

84N6323.DOCX

To the extent that any Claim is estimated for any purpose other than for voting, then in no event will such Claim be Allowed in an amount greater than the estimated amount.

**13.9    Consent to Jurisdiction.**

By accepting any Distribution or payment under or in connection with the Plan or by filing any Proof of Claim, all Creditors and other parties in interest have consented, and will be deemed to have expressly consented to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Bankruptcy Case, including the matters and purposes set forth in the Plan.

**13.10    Severability of Plan Provisions.**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Brady L. Skinner

Dated: May 14, 2022

84N6323.DOCX

# Exhibit "B"

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

                                                Case No: 8:22-bk-00445-CPM
BRADY L. SKINNER,                               Chapter 11

          Debtor.
_____/

# BALLOT FOR ACCEPTING OR REJECTING
## CHAPTER 11 PLAN OF BRADY L. SKINNER

    Brady L. Skinner (the "**Debtor**") filed the *Chapter 11 Plan of Brady L. Skinner* (the "**Plan**") dated May 14, 2022.  The Court has conditionally approved the *Disclosure Statement in Connection with Chapter 11 Plan of Brady L. Skinner* (the "**Disclosure Statement**").  The Disclosure Statement provides information to assist you in deciding how to vote your ballot.  A copy of the Disclosure Statement is being provided to you in connection with this ballot.  Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court.

    You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  The chart below identifies the classes of claims under the Plan.  If you hold claims or equity interests in more than class, you will receive a ballot for each class in which you are entitled to vote.

| SUMMARY OF CLASSIFICATION OF CLAIMS OR INTERESTS | |
| --- | --- |
| [For a full description of the claims or interests in each class, please refer to the Debtor's Plan] | |
| **Class** | **Description of Claim or Interest** |
| 1 | **Priority Claims** |
| 2 | **Secured Claim of Shellpoint Mortgage (Homestead)** |
| 3 | **Secured Claim of Sarasota County Property Tax Collector (Homestead)** |
| 4 | **Secured Claim of Wells Fargo** |
| 5 | **Secured Claim of 217 Funding (All Asset Pledge)** |
| 6 | **Secured Claim of JGAR (Judgment Lien)** |
| 7 | **General Unsecured Claims** |

    If the Plan is confirmed by the Court, it will be binding on you whether or not you vote.

8470108.DOCX

**To have your vote count, you must complete and return this ballot so that it is received by the Court on or before [date].**

---

**Name of Creditor:**_____

**Amount of Claim:  $**_____  **Class:** _____

The undersigned, a creditor of the above-named Debtor in the unpaid principal amount stated above,

[  ] **Accepts**                    [  ] **Rejects**

the Plan.

---

Signed: _____

Printed or Typed Name: _____

Title: _____

Name of Company: _____

Address: _____

---

| This ballot must be **received** on or before _____, by the Court at the following address: | A copy of this ballot is to be sent to: |
|---|---|
| Clerk, United States Bankruptcy Court Sam M. Gibbons U.S. Courthouse 801 North Florida Avenue, Suite 555 Tampa, Florida 33602-3826 | Kathleen L. DiSanto, Esquire Bush Ross, P.A. Post Office Box 3913 Tampa, Florida 33601-3913 |
| -or- | |
| Electronically by accessing the Bankruptcy Court's website at http://www.flmb.uscourts.gov and selecting Chapter 11 Ballots under Electronic Filing | |

8470108.DOCX

# Exhibit "C"

# LIQUIDATION ANALYSIS
## Brady L. Skinner
## Case No. 8:22-bk-00445-CPM

| | Estimated Value* | Encumbrances | Estimated Net Liquidation Value* | Treatment and Value of Property Under Proposed Plan | Notes |
|---|---|---|---|---|---|
| **I. STATEMENT OF ASSETS** | | | | | |
| Cash in DIP Account or BOA Account | $ 500.00 | Exempt | $ 0.00 | Retained | 1 |
| Debtor's Plan Payments for Administrative Expense Claims and Unsecured Creditor Distribution | N/A | N/A | N/A | $ 55,000.00 | 2 |
| Household Goods and Other Personal Property | $ 2,270.00 | Exempt/Encumbered | $ 0.00 | Retained | 3 |
| Jewelry | $ 100.00 | Pledged | $ 0.00 | Retained | 4 |
| Phoenix Settlers Walk, Inc. (100% shareholder interest) | Unknown | Pledged | $ 0.00 | Retained | 5 |
| SKS Real Estate, LLC (100% membership interest) | Unknown | Pledged | $ 0.00 | Retained | 6 |
| Dayton's Angels II LLC (6.6225% membership interest) | $ 0.00 | Pledged | $ 0.00 | Retained | 7 |
| Interest in Various Inactive or Administratively Dissolved Entities | $ 0.00 | Pledged | $ 0.00 | Retained | 8 |
| ROTH Account | $ 430,828.28 | Exempt | $ 0.00 | Retained | 9 |
| Accounting License | $ 0.00 | Exempt | $ 0.00 | Retained | 10 |
| Homestead Property (6911 Point of Rocks Road, Sarasota, FL 34242) | $ 1,457,100.00 | Exempt/Encumbered | $ 0.00 | Retained | 11 |
| 50% Distributions from Brother's Probate Estate | $ 2,000.00 | None | $ 2,000.00 | Retained | 12 |
| Claims against Charles Schawb | Unknown | None | $ 0.00 | Retained | 13 |
| Miscellaneous defenses, claims, and counterclaims | Unknown | None | $ 0.00 | Retained | 14 |
| Chapter 5 Claims | $ 0.00 | None | $ 0.00 | Retained | 15 |
| Funds Held in Trust by Cole & Cole Law, P.A. | $ 200.00 | None | $ 0.00 | Retained | 16 |
| Tax Attributes | Unknown | None | $ 0.00 | Retained | 17 |
| 2018 Mercedes Benz GLC-Class AMG GLC43 | $ 20,000.00 | Exempt/Encumbered | $ 0.00 | Retained | 18 |
| **Total** | | | **$ 2,000.00** | **$ 55,000.00** | |
| | | | | | |
| **II. ADMINISTRATIVE EXPENSE CLAIMS** | | | | | |
| Trustee Fees Pursuant to 11 U.S.C. § 326 | | | $ 2,800.00 | N/A | 19 |
| Chapter 7 Trustee Expenses (Estimated) | | | $ 5,000.00 | N/A | 20 |
| Chapter 7 Trustee's Counsel (Estimated) | | | $ 20,000.00 | N/A | 21 |
| Chapter 11 Administrative Expense Claims | | | $ 40,000.00 | $ 35,000.00 | 22 |
| **Total Administrative Claims** | | | $ 67,800.00 | $ 35,000.00 | |
| | | | | | |
| **III. Priority Claims** | | | | | |
| | | | $ 0.00 | | |
| | | | | | |
| **IV. GENERAL UNSECURED CLAIMS** | | | | | |
| Funds Available for Unsecured Claims (Estimated at $23,109,326.66) | | | $ (65,800.00) | $ 20,000.00 | |

* Estimated value represents the Debtor's opinion of the fair market value of assets without regard to liquidation costs or discounts.  The Net Liquidation Value is the Debtor's estimated value based on the sale of the Debtor's non-exempt assets in a forced sale less payment of any secured claims secured by such assets.  If an asset is exempt, the Debtor estimates the Net Liquidation Value at zero.

**LIQUIDATION ANALYSIS FOR BRADY L. SKINNER**

## GENERAL NOTES APPLICABLE TO LIQUIDATION ANALYSIS

A.  This Liquidation Analysis was formulated based on information considered accurate as of May 2022.  It is prepared in connection with the Disclosure Statement submitted in connection with the Chapter 11 Reorganization Plan (the "**Plan**") of Brady L. Skinner (the "**Debtor**").  This Liquidation Analysis is intended to quantify estimated recoveries that could be expected by creditors holding claims against the Debtor if the Plan were not confirmed and the Debtor's assets were instead liquidated by a Chapter 7 Trustee on the effective date of the Plan.  The column headed "Estimated Net Liquidation Value" represents the Debtor's estimate of the value that could be obtained, net of sales expenses, in a Chapter 7 liquidation where a Chapter 7 Trustee has the duty to convert the assets of the estate to cash as quickly as possible under 11 U.S.C. § 704(a)(1).

B.  This Liquidation Analysis is based upon a number of estimates and assumptions that, although developed and considered reasonable by the Debtor, are inherently subject to significant economic factors, market conditions, personal uncertainties, and contingencies beyond the control of the Debtor.  The Liquidation Analysis is also based on assumptions with regard to liquidation decisions that are subject to change. Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtor's non-exempt assets were to be liquidated and actual results could vary materially and adversely from those contained herein.  The liquidation values represent the Debtor's best estimate of those values based on currently available information, and the Debtor reserves the right to modify this Liquidation Analysis based on additional information becoming available.

C.  This analysis assumes the conversion of the current Chapter 11 case to a Chapter 7 case with the liquidation of the Debtor's assets by a Chapter 7 Trustee in a significantly abbreviated timeframe.  In that event, a Chapter 7 Trustee would be appointed to administer the estate.  The Chapter 7 Trustee is independent and would be entitled to make all of his or her own decisions regarding the liquidation of the estate's assets, the hiring of professionals, the pursuit of claims or litigation, the payment of or objection to claims, and the distribution of any ultimate dividend.  The Trustee would also be required to perform duties, such as filing tax returns, that under the Plan will be undertaken by the Debtor. The Chapter 7 Trustee would be compensated from the liquidation of assets of the Chapter 7 estate as a first priority claim in accordance with the Bankruptcy Code.  The estimated costs of such a hypothetical liquidation are set forth in Section II of the Liquidation Analysis.

D.  There can be no assurances made that all of the Debtor's non-exempt assets will be completely liquidated during the shortened liquidation period in a Chapter 7. Moreover, the applicability of certain exemptions would reduce the assets available for liquidation for the benefit of creditors. In many instances, the Chapter 7 Trustee may elect to simply abandon certain assets determined to have no value to the Debtor's bankruptcy estate.

E.  Section IV of this Liquidation Analysis is the Debtor's best estimate of the net liquidation value of assets available for distribution to the Debtor's unsecured creditors after deducting payments made from the proceeds of the sale of estate assets to secured creditors on account of claims secured by those assets, hypothetical Chapter 7 administrative expense claims (inclusive of a Chapter 7 Trustee's statutory commission, professional fees and expenses), and administrative claims in the Chapter 7 and Chapter 11 cases.

F.  This Liquidation Analysis is without prejudice to the Debtor's ability to object to the characterization, amount, secured status or classification of any claim or asset, and is not to be deemed an admission or concession of any issue of fact or law.

**NOTES TO LIQUIDATION ANALYSIS:**

1. This amount is estimated as of the anticipated Effective Date. The Debtor believes the funds in the account are exempt, as they are traceable to Social Security benefit payments or distributions from the Debtor's retirement account.

2. Under the Debtor's proposed Plan, the Debtor will commit projected disposable income of $55,000.00 for the payment of Allowed Administrative Expense Claims and funding the Unsecured Creditor Distribution. The funds would not be available in a Chapter 7 liquidation of the Debtor's assets.

3. Based on the appraisal by Robert Bonnell, the Debtor has scheduled the fair market value of his household goods, furnishings and clothing to be approximately $2,270.00. The Debtor has pledged all of his assets to secure the obligation owed to 217 Funding, and 217 Funding has recorded a financing statement perfecting a security interest in the Debtor's property. In addition, JGAR contends it has a lien against the Debtor's personal property by virtue of a recorded judgment lien certificate. If the Debtor successfully avoided any interest of any other creditor asserting an interest in the Debtor's personal property, a liquidation of the Debtor's non-exempt household goods would likely bring substantially less than the fair market value of the property and would likely be subject to a 10% (or more) commission if liquidated by a Chapter 7 Trustee.

4. The Debtor owns one piece of jewelry--his father's high school class ring, which the Debtor has valued at $100.00. The Debtor has pledged all of his assets to secure the obligation owed to 217 Funding, and 217 Funding has recorded a financing statement perfecting a security interest in the Debtor's property. In addition, JGAR contends it has a lien against the Debtor's personal property by virtue of a recorded judgment lien certificate. If the Debtor successfully avoided any interest of any other creditor asserting an interest in the Debtor's personal property, a liquidation of the Debtor's non-exempt household goods would likely bring substantially less than the fair market value of the property and would likely be subject to a 10% (or more) commission if liquidated by a Chapter 7 Trustee.

5. The Debtor's interest in Phoenix Settlers Walk, Inc. is pledged to 217 Funding and is fully encumbered by the lender's lien. The entity's sole asset is a cause of action against Settlers Walk Homeowners Association. The Ohio Court of Appeals recently entered a decision modifying the trial court's restitution order and directing judgment in favor of Phoenix Settles Walk in the amount of $158,530.24 "plus post-judgment interest at the statutory rate."

6. The Debtor's interest in SKS Real Estate, LLC is pledged to 217 Funding and is fully encumbered by the lender's lien. The Ohio limited liability company owns a 50% interest in four parcels of real estate subject to mortgages and judgment liens.

7. The Debtor's interest in Dayton's Angels II LLC is pledged to 217 Funding and is fully encumbered by the lender's lien. Dayton's Angels II LLC owns a script and/or production rights to a Broadway show that was shuttered by the COIV-19 pandemic. No distributions are anticipated.

8. The Debtor believes his interests in the inactive and administratively dissolved entities have no value for the reason set forth in the Disclosure Statement.

9.    The Debtor believes his interest in the ROTH Accounts is exempt pursuant to Fla. Stat. § 222.21(2).

10.    The Debtor believes his accounting license has no value because it is non-transferable and for the reasons set forth in the Disclosure Statement.

11.    The Debtor is entitled to claim the homestead exemption under Fla. Const. Art. X, § 4(a)(1); Fla. Stat. §§ 222.01, 222.02, 222.05 for the property located at 6911 Point of Rocks Road, Sarasota, FL 34242.

12.    The Debtor anticipates receiving approximately $2,000.00 in distributions from his brother's probate estate from the sale of vehicles.

13.    The Debtor is continuing to evaluate claims againt Charles Schwab.  The cost of litigation and likelihood of success in the litigation against Charles Schwab is unknown.

14.    Assuming the Debtor is entitled to receive a discharge, the Debtor does not presently intend to continue to litigate any of the claims, defenses, or counterclaims disclosed in the Schedules, with the exception of the Schwab claims.  Consequently, the value of the claims, defenses, or counterclaims is not known.

15.    The Debtor believes there may be potential chapter 5 claims against his son and Kimberly Ward for gifts given during the year prior to the Petition Date.  However, the collectibility of the claims is highly questionable.

16.    Given the de minimis amount of the funds held by Cole & Cole Law, P.A., the Debtor does not see any benefit in seeking to recover such amounts, as the cost of doing so would exceed the potential recovery.

17.    The Debtor believes the tax attributes may reduce his or the estate's tax liability but will likely not generate a refund.  If the tax attributes are not applied, the Debtor's tax liability would in all likelihood increase and reduce Projected Disposable Income.

18.    The value of the vehicle is based on an appraisal completed by Robert Bonnell.  The Debtor is entitled to claim a $1,000 exemption in an automobile pursuant to Fla. Stat. § 222.25(1).  In addition, the Debtor claimed a $1,000 personal property exemption under Fla. Const. Art. X, § 4(a)(2).  The Debtor believes the vehicle is otherwise fully encumbered by Wells Fargo's lien.

19.    These fees that would be paid to a Chapter 7 trustee as a statutory commission are calculated pursuant to 11 U.S.C. 326, based on the estimated distributions from a Chapter 7 estate.

20.    The Debtor anticipates that the administrative costs of the Chapter 7, including costs of professionals that will be needed to dispose of or abandon the Debtor's assets and prepare any final tax returns for the Chapter 7 estate will be approximately $5,000.00.

21.    The Debtor anticipates that the administrative costs of the Chapter 7 Trustee's counsel will be approximately $20,000.00 based on the issues that would be associated with the Chapter 7 proceedings, including the evaluation of assets, investigation and prosecution of potential avoidance actions, and procedures required for abandonment or liquidation analysis.

22.  The Debtor estimates that the Chapter 11 administrative claims, consisting primarily of the professional fees to Debtor's counsel after application of retainer to be $35,000.00.

# Exhibit "D"

**Plan Projections for Brady L. Skinner**
**Case No. 8:22-bk-00445-CPM**

| | Month 1 July 2022 | Month 2 Aug 2022 | Month 3 Sept 2022 | Month 4 Oct 2022 | Month 5 Nov 2022 | Month 6 Dec 2022 | Month 6 Jan 2023 | Month 6 Feb 2023 | Month 6 Mar 2023 | Month 6 April 2023 | Month 6 May 2023 | Month 6 June 2023 | Year 2 | Year 3 | Year 4 | Year 5 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | | | | | | | | | | | |
| **Salary or Cash from Business** | | | | | | | | | | | | | | | | | |
| Social Security Income | 2,600.11 | 2,600.11 | 2,600.11 | 2,600.11 | 2,600.11 | 2,600.11 | 2,600.11 | 2,600.11 | 2,600.11 | 2,600.11 | 2,600.11 | 2,600.11 | 31,201.32 | 31,201.32 | 31,201.32 | 31,201.32 | 156,006.60 |
| Retirement Income | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 60,000.00 | 300,000.00 |
| **TOTAL RECEIPTS** | 7,600.11 | 7,600.11 | 7,600.11 | 7,600.11 | 7,600.11 | 7,600.11 | 7,600.11 | 7,600.11 | 7,600.11 | 7,600.11 | 7,600.11 | 7,600.11 | 91,201.32 | 91,201.32 | 91,201.32 | 91,201.32 | 456,006.60 |
| | | | | | | | | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Alimony or Child Support Payments** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Charitable Contributions** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Gifts** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Household Expenses/Food/Clothing** | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Food [3] | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Clothing | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 6,000.00 |
| Personal Care Products and Services | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200.00 | 1,200.00 | 1,200.00 | 1,200.00 | 6,000.00 |
| **Household Repairs & Maintenance** | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Repairs & Maintenance [3] | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| HOA/CA Dues & Assessments | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Insurance** | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Vehicle Insurance | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 12,000.00 |
| Life Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Property Insurance [2] | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **IRA Contribution** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Lease/Rent Payments** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Medical/Dental Payments** [1] | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 4,200.00 | 4,200.00 | 4,200.00 | 4,200.00 | 21,000.00 |
| **Mortgage Payments** | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| U.S. Bank [2] | 3,900.00 | 3,900.00 | 3,900.00 | 3,900.00 | 3,900.00 | 3,900.00 | 3,900.00 | 3,900.00 | 3,900.00 | 3,900.00 | 3,900.00 | 3,900.00 | 46,800.00 | 46,800.00 | 46,800.00 | 46,800.00 | 234,000.00 |
| **Other Secured Payments** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Taxes - Personal Property** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Taxes - Real Estate** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Taxes Other** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Estimated Quarterly Tax | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Tax, Medicare, Payroll Deductions | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Travel & Entertainment** | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 12,000.00 |
| **Tuition/Education** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Utilities** | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Water | 275.00 | 275.00 | 275.00 | 275.00 | 275.00 | 275.00 | 275.00 | 275.00 | 275.00 | 275.00 | 275.00 | 275.00 | 3,300.00 | 3,300.00 | 3,300.00 | 3,300.00 | 16,500.00 |
| Energy/Power | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 3,600.00 | 3,600.00 | 3,600.00 | 3,600.00 | 18,000.00 |
| Cell Phone/Cable | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 24,000.00 |
| **Vehicle Expenses** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Vehicle Secured Payments** | | | | | | | | | | | | | | | | | |
| Wells Fargo Auto Finance | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 9,600.00 | 9,600.00 | 9,600.00 | 9,600.00 | 48,000.00 |
| **U.S. Quarterly Fees** | 0.00 | 0.00 | 250.00 | 0.00 | 0.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 10,000.00 |
| **Professional Fees** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Other Miscellaneous** | | | | | | | | | | | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| None | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Bank Charges, Bank Transfers, Credit Reports | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **TOTAL EXPENSES** | 6,625.00 | 6,625.00 | 6,875.00 | 6,625.00 | 6,625.00 | 6,875.00 | 6,875.00 | 6,875.00 | 6,875.00 | 6,875.00 | 6,875.00 | 6,875.00 | 81,500.00 | 81,500.00 | 81,500.00 | 81,500.00 | 407,500.00 |
| **NET INCOME** | | | | | | | | | | | | | | | | | 48,506.60 |

**NOTES:**
1 This line item includes estimated medical expenses and health insurance premiums.
2 The mortgage payment includes an escrow for estimated taxes, property insurance, and hazard insurance.
3 These expenses are paid by the Debtor's roommates.